[Cite as *Herrara v. Chung*, 2021-Ohio-1728.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

BELI DEL VALLIE GONZALEZ HERRERA,:

    Plaintiff-Appellee,    :

                           No. 109793

    v.    :

PHIL WHA CHUNG,    :

    Defendant-Appellant.    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART
**RELEASED AND JOURNALIZED:** May 20, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-17-367288

---

### *Appearances:*

Murphy Law Offices, L.L.C., and Troy Murphy, *for appellee.*

Bradley Hull, IV, L.L.C., and Bradley Hull, IV, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Phil Wha Chung ("Husband"), appeals from various aspects of the trial court's judgment that granted a divorce decree to him and Beli Del Vallie Gonzalez Herrera ("Wife"). We affirm in part and reverse in part.

## I.    Background

{¶ 2}   On May 31, 2017, Wife filed a complaint for divorce against Husband. The trial court entered a divorce decree on October 24, 2017.  Husband filed a Civ.R. 60(B) motion for relief from judgment because although it appeared that Husband had been served with the complaint, all court notices were sent to an incorrect address for Husband, and he did not receive notice of the final hearing; the trial court granted the motion.  The trial court then held hearings over three days in 2020, after which it issued a judgment entry of divorce with a division of the parties' property.

{¶ 3}   The evidence at trial demonstrated that the parties were married on March 19, 2016, in Little Rock, Arkansas, two weeks after Wife's divorce from Jesus Pulido.  Husband and Wife moved to Solon, Ohio in June 2016.  The evidence was disputed regarding whether Husband was employed; Wife worked for Windstream. Husband left the marital home on December 8, 2016, and never returned.  Wife testified that Husband left because she was four months pregnant, and he wanted nothing to do with the unborn child and accompanying financial responsibilities. Husband testified that shortly after obtaining her green card, Wife told him she hated him and he should move out, which he did.  He testified further that he wanted an annulment rather than a divorce because he believed Wife merely used the marriage to obtain her green card.  The parties' child, C., was born on May 3, 2017.

{¶ 4} Husband and Wife testified that they opened joint checking and savings accounts after their marriage. The accounts were funded by monies received as wedding gifts and Husband's savings. The evidence demonstrated that the funds in the accounts were depleted at the time of trial, and the accounts were closed. Wife testified that she has a joint bank account with her ex-husband Pulido, and another with her brother, Andies Gonzalez-Herrera. Both Husband and Wife agreed these accounts were opened prior to the parties' marriage, but Husband testified that Wife never told him about these accounts during the marriage, and he only learned of their existence through Wife's responses to his discovery requests.

{¶ 5} Husband testified that he moved to Texas in December 2016, to look for work. He said he was hopeful until May 31, 2017, when Wife filed for divorce, that the parties would reconcile, but acknowledged that he never came back to visit Wife before their daughter was born. He testified that he sent Wife $7,500 between December 2016 and May 2017, and also paid the utility bills for several months after he left. Wife acknowledged that Husband sent some money after he left, but disputed the amount and Husband's claim that he sent her money every month from December 2016, until C. was born.

{¶ 6} On cross-examination, Husband testified that, four or five months prior to the hearing, he had spoken with someone at the University Hospitals Pediatric Center in Twinsburg, Ohio, where C. was delivered, and was told there were no outstanding bills relating to Wife's labor and delivery of C.

{¶ 7} Wife testified that on November 5, 2016, her brother wrote a check for $11,486.45 to Ganley Automotive as payment for a car for himself; the check was drawn on Wife's joint account with her brother. Wife testified that the money for the car came from child support payments made by her ex-husband that she transferred into the joint account with her brother. Wife testified further that over the course of eight days in February 2017, she wrote six checks of $5,000 each to her brother from her own checking account. Wife said the money came from her savings account and employment compensation; she said that her brother paid back some but not all of the money.

{¶ 8} Wife acknowledged that although she sent a text to Husband on September 21, 2017, stating "I barely have [enough] to cover food and bills," on October 26, 2017, two days after the first decree of divorce was journalized, she purchased a home in Solon, Ohio for $274,000, upon which she made a down payment of $56,901.16. Wife testified the down payment came from monies she had saved prior to her marriage to Husband and that her brother gave her $30,000 to put toward the house, although she said did not use all of the $30,000 for the down payment.

{¶ 9} Wife testified that plaintiff's exhibit No. 30 was a summary she had compiled of expenses for her labor and delivery expenses, C.'s post-birth treatment, and pharmacy expenses for both of them. Unauthenticated copies of invoices from University Hospitals, pharmacy bills, credit card receipts from CVS and Walgreens, and explanation of insurance benefit statements were attached to the itemization.

Wife testified that the bills, including the cost of medical insurance from November 1, 2016, to May 12, 2017, totaled $11,438.46. The trial court overruled Husband's objections that the exhibit was inadmissible hearsay.

{¶ 10} The trial court subsequently denied Husband's request for an annulment and entered a decree of divorce. It found that the parties had previously entered into an agreed judgment entry regarding shared parenting, a parenting time schedule, and child support calculation, and ordered that the parties share the rights and responsibilities in accordance with the previously approved shared parenting plan.

{¶ 11} With respect to the division of marital property, the trial court found that the parties' two joint bank accounts were depleted and closed, and therefore no division of those accounts was necessary. It further found that Wife had separate accounts with her ex-husband Pulido and her brother that had been established prior to the marriage, and that Husband was unable to substantiate that any marital funds went into either account. It found that the money from Wife's joint account with her brother to purchase a car for the brother was a gift from Wife to her brother.

{¶ 12} The court found that Wife had provided a "detailed accounting of the medical expenses relating to the birth of the parties' child" that included "charges, offsets from insurance, payments from insurance, and patient responsibility." It found that although Husband had testified that he had given Wife money after he left in December 2016, it was unclear from the testimony and evidence what money had been provided to Wife. The trial court found the medical expenses relating to

the birth of the parties' child to be $11,438.46, for which Husband's equal responsibility was $5,719.23, and ordered that Husband reimburse Wife that amount. The trial court also divided the parties' personal property.

{¶ 13} This appeal followed.

## II. Law and Analysis

### A. Medical Bills

{¶ 14} In his first assignment of error, Husband contends that the trial court erred in ordering that he pay Wife half of the medical expenses she claimed were related to the birth of the parties' daughter in May 2017. Husband contends that Wife failed to produce adequate proof of the existence of any debt, and further, that exhibit No. 30 was inadmissible hearsay under Evid.R. 803.

{¶ 15} Wife contends that the trial court properly ordered Husband to pay half of the medical expenses related to C.'s birth because her "detailed presentation of medical bills" established medical expenses of $11,438.46. She further contends that Husband admitted in his appellate brief that Wife "provided documentation that should have been allowed into evidence regarding any such debt." Wife's arguments are without merit.

{¶ 16} First, in light of Husband's objections in the trial court and his assignment of error on appeal, it is apparent that Husband's brief inadvertently omitted the word "not," and the sentence quoted by Wife is meant to read, "It is noteworthy that [Wife] provided documentation that should *not* have been allowed into evidence regarding any such debts." Such a reading comports with the rest of

the paragraph, in which Husband argues that Wife's exhibit No. 30 was inadmissible hearsay.

{¶ 17} Second, Husband is correct that exhibit No. 30 was improperly admitted at trial because it was hearsay, and thus required the laying of a foundation by a records custodian or other qualified witness under Evid.R. 803(6), which Wife did not do.

{¶ 18} '"On appeal, challenged hearsay is subject to de novo review under the applicable hearsay rule, rather than the more deferential review employed for discretionary rulings' because 'while there is discretion to admit or exclude relevant evidence, there is no discretion to admit hearsay.'" *LaBounty v. Big 3 Automotive*, 6th Dist. Ottawa No. OT-18-022, 2019-Ohio-1919, ¶ 42, quoting *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶ 29, 32 (6th Dist.), citing *State v. Sutorius*, 122 Ohio App.3d 1, 7, 701 N.E.2d 1 (1st Dist.1997) and *State v. Sorrels*, 71 Ohio App.3d 162, 165, 593 N.E.2d 313 (1st Dist.1991).

{¶ 19} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible except under specifically delineated circumstances. Evid.R. 802.

{¶ 20} Wife's exhibit No. 30 contained a summary of hospital, pharmacy, and insurance costs related to C.'s birth that were allegedly incurred by Wife. Wife testified that she prepared the summary from the photocopied documents contained in exhibit No. 30: invoices from University Hospitals, explanation of insurance

benefit statements from CoreSource, invoices for prescriptions, and copies of credit card receipts from Walgreens and CVS. Significantly, Wife offered no independent testimony as to the amount of money she paid for medical services related to C.'s birth. Rather, she relied exclusively on the summary and the documents attached thereto to establish that she had incurred $11,438.46 in medical expenses. (Vol. III, tr. 80-81.)

{¶ 21} It is apparent, therefore, that the summary and attached documents contained in exhibit No. 30 were offered to prove the truth of the matters asserted therein — namely, that the medical services were obtained and the cost of the services. They thus constituted hearsay. *See, e.g., LaBounty*, 6th Dist. Ottawa No. OT-18-022, 2019-Ohio-1919, at ¶ 46 (in breach of contract action, because the plaintiff offered no independent testimony as to the amount he paid for the services rendered but relied exclusively upon invoices to prove the work was performed and the cost incurred, the invoices constituted hearsay); *League v. Collins*, 12th Dist. Butler No. CA2013-03-041, 2013-Ohio-3857 (attorney's invoice was hearsay because it was used to prove that the plaintiff, in defending against a motion for contempt, had incurred $965 in attorney fees as set forth on the invoice).

{¶ 22} Having been offered to prove the truth of the matters asserted therein, the summary and attached documents contained in exhibit No. 30 are inadmissible hearsay unless they fall within one of the hearsay exceptions of Evid.R. 803. The only possible applicable exception is the business records exception under Evid.R. 803(6).

{¶ 23} To qualify for the business records exception, the record must be one regularly recorded in a regularly conducted activity; a person with knowledge of the act or event recorded must have made the record; the record must have been recorded at or near the time of the act or event; and the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or another qualified witness. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.

{¶ 24} The Ohio Supreme Court has held that the business records exception "is based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of entries made and kept with knowledge that they will be relied upon in a systematic conduct of such businesses, are accurate and trustworthy." *Weis v. Weis*, 147 Ohio St.416, 425-426, 72 N.E.2d 245 (1947). To lay a proper foundation for business records under Evid.R. 803(6), "the testifying witness must possess a working knowledge of the specific record-keeping system that produced the document." *State v. Davis*, 62 Ohio St.3d 326, 342, 581 N.E.2d 1362 (1991).

{¶ 25} Wife failed to lay a proper foundation for any of the documents contained in exhibit No. 30. She was the only witness to testify concerning the summary she created and the photocopies of the business records attached to the summary. But Wife was not the records custodian, or even a qualified witness, because she did not possess any knowledge about the record-keeping systems that

produced the documents attached to the summary. Thus, the business records are inadmissible hearsay. And Wife's summary of medical services incurred and the cost of those services is itself inadmissible hearsay because it merely recites hearsay received by Wife from the documents attached to the summary. *See, e.g., State v. Comstock,* 11th Dist. Ashtabula No. 96-A-0058, 1997 Ohio App. LEXIS 3670 (Aug. 15, 1997) (photocopied invoices from a repair company that performed repair work at a township community center were inadmissible hearsay, despite testimony of township trustee that he received the invoices in the course of his duties as a trustee, because the invoices were submitted to prove the amount of damages to the community center, and the trustee was not a qualified witness who possessed any knowledge of the record system used by the repair company).

{¶ 26} Without a proper foundation under Evid.R. 803(6), the trial court erred in admitting exhibit No. 30 into evidence. By extension, the trial court's order that Husband reimburse Wife for his "equal share" of the alleged medical expenses must be vacated because it was based entirely upon the erroneously admitted summary and documents contained in exhibit No. 30. The first assignment of error is therefore sustained.

### B. Marriage Termination Date

{¶ 27} In his second assignment of error, Husband contends that the trial court erred in ordering that the de facto termination date for the marriage was December 8, 2016, when he left the home. He contends the de facto termination date should be May 31, 2017, when Wife filed for divorce.

{¶ 28} The date of the final hearing in a divorce proceeding is presumed to be the termination date of the marriage unless the court determines that the use of that date would be inequitable in determining marital property. R.C. 3105.171(A)(2). If the court determines that a de factor termination date of the marriage occurred earlier than the final hearing date, and that using the date of the final hearing as the termination date would be inequitable, the court may in its discretion select a date it considers equitable. *Saks v. Riga*, 8th Dist. Cuyahoga No. 101091, 2014-Ohio-4930, ¶ 8, citing *Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982).

{¶ 29} Generally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliations, and continually maintain separate residences, separate business activities, and separate bank accounts. *Gullia v. Gullia*, 93 Ohio App.3d 653, 666, 639 N.E.2d 822 (8th Dist.1994). This court has "cautioned that a de facto date should not be used unless the 'evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances.'" *Brown v. Brown*, 2014-Ohio-2402, 14 N.E.3d 404, ¶ 9 (8th Dist.), quoting *O'Brien v. O'Brien*, 8th Dist. Cuyahoga No. 89615, 2008-Ohio-1098, ¶ 41. The trial court has broad discretion in choosing the appropriate marriage termination date, and this discretion should not be disturbed on appeal absent an abuse of that discretion. *Ballinger v. Ballinger*, 8th Dist. Cuyahoga Nos. 100958, 101074, 101655, and 101812, 2015-Ohio-590, ¶ 17.

{¶ 30} Husband recognizes that the court properly used a de facto termination date but contends the trial court used the wrong de facto date. The trial court's judgment entry stated that it based its determination on the following findings: (1) Husband voluntarily vacated the marital residence on December 8, 2016, and never returned after he relocated to Texas; (2) the parties never filed joint tax returns; (3) there were no subsequent marital relations; and (4) both parties paid their own expenses after December 8, 2016. In light of these findings, we find no abuse of discretion in the trial court's conclusion that the de facto termination of the marriage occurred on December 8, 2016.

{¶ 31} Husband contends that the trial court used the wrong date because the parties were not fully separated after December 8, 2016, he had not abandoned the marital residence, he hoped to reconcile, and he continued to support Wife financially after he left. The evidence, however, reveals otherwise. Husband testified that he relocated to Texas after he voluntarily left the marital residence, and that he did not come back to visit Wife until several weeks after she gave birth to the parties' daughter in May 2017. Thus, by Husband's own admission, he never returned after he vacated the marital home, and there was no attempt at reconciliation.

{¶ 32} The evidence also demonstrated that the parties filed separate tax returns. With respect to expenses, the evidence demonstrated that both parties lived separately and apart after December 2016. Although Husband contended at trial that he sent Wife money after he left, he failed to establish with any certainty how

much money he sent or into what accounts it was deposited. In her testimony, although Wife acknowledged that Husband sent her some money after he left, she disputed Husband's claim that he gave her money every month after December 2016, until C.'s birth in May 2017. And although Husband testified that he paid the utility bills for the marital residence until March 2017, he offered no evidence to support this assertion.

{¶ 33} When there are two versions of events, neither of which is unbelievable, we defer to the factfinder, who was best able to weigh the evidence and judge the credibility of the witnesses. *Ballinger*, 8th Dist. Cuyahoga Nos. 100958, 101074, 101655, and 101812, 2015-Ohio-590 at ¶ 28, citing *Season Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1994), and *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). The trial court concluded that the parties paid their own expenses after December 2016, and we find no abuse of discretion in the trial court's conclusion.

{¶ 34} In light of the totality of the circumstances and the evidence presented at trial, we cannot say that the trial court's choice of December 8, 2016, as the de facto termination date of the marriage was arbitrary or unreasonable. The second assignment of error is therefore overruled.

## C. Distribution of Marital Property

{¶ 35} In his third and fourth assignments of error, Husband contends that the trial court erred by not properly allocating marital property.

{¶ 36} R.C. 3105.171(C)(1) mandates an equal division of marital property, or "if an equal division is inequitable, the court must divide the marital property equitably." *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5. We review a trial court's division of marital property for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶ 37} When distributing property in a divorce proceedings, the trial court must first determine what constitutes marital property and what constitutes separate property. *Comella v. Comella*, 8th Dist. Cuyahoga No. 90969, 2008-Ohio-6673, ¶ 38, citing R.C. 3105.171(B). The determination of whether property is marital or separate is a mixed question of law and fact that will not be reversed unless it is against the manifest weight of the evidence. *Kobal v. Kobal*, 2018-Ohio-1755, 111 N.E.3d 804, ¶ 27 (8th Dist.). Once the characterization of the property is made, the reviewing court will not disturb the trial court's distribution of the property absent an abuse of discretion. *Id.*; *Williams v. Williams*, 8th Dist. Cuyahoga No. 95346, 2011-Ohio-939, ¶ 8.

{¶ 38} Property acquired during a marriage is generally presumed to be marital property unless it can be shown to be separate. *Johnson v. Mills*, 8th Dist. Cuyahoga No. 102241, 2015-Ohio-4273, ¶ 18.

{¶ 39} Husband first contends that the trial court erred in dividing the marital property because it did not order that he was entitled to part of the proceeds from Wife's sale of real property in April 2016. Husband contends that he "clearly

showed that [Wife] received $115,941.38 in April 2016, during the parties' marriage, from the sale of property." We disagree.

{¶ 40} At trial, on cross-examination, Wife acknowledged that she owned several properties in Venezuela with her ex-husband but denied that she sold any of the properties during the marriage. She also testified that she could not remember if $115,941.38 was deposited in her joint account with her ex-husband in April 2016. On recross-examination, Wife reviewed Husband's exhibit No. E-3 and testified that it was a bank statement from her joint account with her ex-husband. Husband's counsel then asked Wife if her review of the statement had refreshed her recollection as to whether nearly $116,000 had been deposited into the account in April 2016. Wife said that it did not refresh her recollection. When Husband's counsel then asked Wife to review specific pages and lines of the bank statement, Wife's counsel objected on the basis that Wife had already testified that the statement did not refresh her recollection. The trial court sustained the objection, and also ruled that the bank statement was inadmissible due to Husband's failure to comply with the local rules of the domestic court regarding the timely identification of witnesses (specifically, the custodian of records for the bank statements). Husband makes no argument on appeal that the trial court's evidentiary rulings were an abuse of its discretion, and we find none.

{¶ 41} In light of Wife's testimony, and the fact that the bank statement that allegedly showed Wife's receipt of nearly $116,000 in April 2016, was not admitted into evidence, we find no abuse of discretion in the trial court's failure to award

Husband any portion of the proceeds from the sale of the property. Husband did not "clearly show" that Wife received any proceeds from the sale of real estate during the parties' marriage.[1]

{¶ 42} Husband next contends that he is entitled to a portion of the $11,486.85 that was used to buy Wife's brother a new car. Husband's argument fails because the monies used to buy the car did not come from marital funds. The evidence demonstrated that the $11,486.85 came from a joint account that Wife maintained with her brother, and Husband did not demonstrate that any marital funds were ever deposited into this joint account. Because the funds used to purchase the car for brother came from Wife's separate property, the trial court did not abuse its discretion in not awarding Husband any portion of these monies.

{¶ 43} Last, Husband asserts that he is entitled to a portion of the $30,000 that Wife gave to her brother and which he allegedly repaid. The evidence demonstrated that Wife gave the money to her brother in February 2017, after the marriage had ended. Further, the monies came from Wife's personal checking account, and Husband did not demonstrate that any marital funds were ever deposited into that account. Accordingly, no marital funds were involved. The trial

---

[1] Furthermore, although not argued by Wife, it appears that any proceeds from the sale of Wife's real properties would not be marital property. R.C. 3105.171(A)(6)(a)(i) states that separate property "is any real and personal property or any interest in real or personal property that was acquired by a spouse prior to the date of the marriage." Marital property does not include separate property. R.C. 3105.171(A)(3)(b). The evidence seems to indicate that Wife acquired the real estate with her ex-husband prior to her marriage to Husband; thus, Wife's sale of that separate propety during the parties' marriage would not entitle Husband to a share of the proceeds from that sale.

court did not abuse its discretion, therefore, in not awarding Husband any portion of the repaid monies. The third and fourth assignments of error are overruled.

{¶ 44} Judgment affirmed in part; reversed in part.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., P.J., and
EMANUELLA D. GROVES, J., CONCUR