[Cite as *J.S. v A.S.*, 2024-Ohio-6015.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

J.S.,                                                       :

      Plaintiff-Appellee/
      Cross-Appellant,                          :

                                         Nos. 112963, 112997, and

      v.                                          :        113007

A.S.,                                                       :

      Defendant-Appellant/
      Cross-Appellee.                           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                 AND REMANDED
**RELEASED AND JOURNALIZED:**  December 26, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations
Case No. DR-19-375930

---

### *Appearances:*

Rosenthal│Lane, LLC, Scott S. Rosenthal, and James L.
Lane, *for appellee/cross-appellant*.

Stafford Law Co., L.P.A., Joseph G. Stafford, Nicole A.
Cruz, and Kelley R. Tauring, *for appellant/cross-appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant/cross-appellee, A.S., ("Husband"), appeals the

judgment entry of divorce. Plaintiff-appellee/cross-appellant, cross appeals the

same judgment. For the reasons that follow, we reverse in part and affirm in part the decision of the trial court and remand for further proceedings.

**Facts and Procedural History**

{¶ 2} Wife and Husband were married on August 31, 2003, and they had three children born as issue of the marriage. Wife filed a complaint for divorce on March 18, 2019. The trial court placed a mutual restraining order that, in part, prohibited the parties from withdrawing funds from various joint or individual accounts, including trusts. Husband filed a complaint for divorce on March 21, 2019. The trial court ultimately consolidated the two cases under Wife's case number and designated Husband's complaint as a counterclaim for divorce. Husband filed a motion to dismiss Wife's complaint for divorce alleging lack of personal jurisdiction on March 27, 2019. The trial court denied the motion on May 6, 2019. Husband appealed that decision which we dismissed for lack of a final appealable order.

{¶ 3} Each party filed a motion requesting temporary support. On December 9, 2019, the court issued a magistrate's order on the parties' dual motions for temporary support which required Husband to pay the mortgage on the marital property, with no additional exchange of cash support. In September 2020, the parties agreed to a 2-2-5-5 child custody agreement and to split equally medical expenses uncovered by insurance and the employee portion of medical insurance. Additionally, Wife agreed to pay the mortgage, taxes, and insurance on the marital residence.

{¶ 4} On April 9, 2020, Husband filed a motion to show cause alleging Wife had withdrawn money from her individual trust accounts to pay attorney fees. The court elected to address the motion at trial. In preparation for trial, Wife participated in a psychological examination by Husband's expert, Dr. Steven Neuhaus ("Dr. Neuhaus"). Wife cooperated with the examination, participated in interviews, and signed releases of information of her medical records. Husband did not produce an expert report prior to the trial court's deadline; nevertheless, Husband included Dr. Neuhaus on his witness lists including the one filed the month of trial. Although Husband initially identified Dr. Neuhaus as a testifying expert, Husband did not present Dr. Neuhaus as a witness. Wife issued a subpoena for Dr. Neuhaus's records and expert reports on April 19, 2021.

{¶ 5} The bench trial in the matter commenced on April 19, 2021, and was scheduled for three days. The parties were unable to complete their cases within that time. On April 29, 2021, Wife filed a motion to compel Dr. Neuhaus to respond to the subpoena. Dr. Neuhaus and Husband each filed motions to quash the subpoena. Dr. Neuhaus averred in an affidavit that he was informed by Husband's counsel after trial started that he would not be testifying. Husband never formally withdrew Dr. Neuhaus as a testifying expert. The trial court granted the motions to quash, and Wife appealed. This court dismissed the appeal for lack of a final appealable order on July 26, 2021. Wife appealed that decision to the Ohio Supreme Court, which declined to accept jurisdiction on December 7, 2021. Due to the

appeals and the trial court's schedule, the trial did not resume until March 2023 and concluded in June 2023. The trial court issued its decision on June 30, 2023.

{¶ 6} The primary marital property was owned by Husband's mother and uncle prior to his marriage. Husband initially purchased his uncle's share in the property, for approximately $150,000. The deed transferred the uncle's share in the property to Husband and to Husband's mother. Husband believed the house was worth $300,000. During the marriage, the parties purchased Husband's mother's interest in the property. Both parties had the property appraised and presented separate witnesses regarding its fair market value. The court ultimately found that Husband had a separate one-half interest in the marital property and that the remaining equity should be divided equally between the parties. At the conclusion of the marriage, the court found the value of the home to be $350,000 with a mortgage of $204,000. The court found Wife was entitled to $36,500 of the $146,000 equity in the home. A separate property that Wife leased was to remain in her name, and she was solely responsible for all costs associated with the lease agreement.

{¶ 7} The trial court awarded each spouse their separate vehicles. Husband owned a 2014 Subaru Impreza, and Wife drove a leased 2022 Lexus SUV. The court found that Wife's jewelry which consisted of gifts from her father, B.T., and a tennis bracelet from Husband were her separate property. The court found that Wife liquidated several trusts in her name to pay attorney's fees. The court found that

those funds were Wife's separate property.  The court's order addressed additional accounts, but they are not relevant to this appeal.

{¶ 8}  The court found that the parties had the following retirement accounts during the marriage:  Wife had a 401k account with Nordstrom, a previous employer, and Husband held a 401K through his employer, an IRA and a TDA account.  The court ordered each retirement asset earned during the marriage to be divided equally between the parties.

{¶ 9}  During the trial, Wife testified that she stopped working after the birth of their first child in 2005.  Husband worked several jobs during the marriage and had a period of unemployment after being laid off.  Towards the end of the marriage after the divorce began, Husband obtained a position with a salary of $94,500 per year.  During the marriage, B.T., Wife's father, supplemented the couples' income.  The trial court ultimately found:

> The evidence clearly shows that [Wife] has made substantial financial contributions to the family for the entirety of the marriage despite not being employed or earning an income.  There have also been many issues related to the discovery process on these issues that extended well into trial.
>
> [Wife] has maintained throughout the trial that she has no income and, at best, should be imputed at the minimum wage.  The Court does not find this testimony to be credible.  This approach would yield an outcome that is inconsistent with R.C. 3119.01 and is fundamentally inequitable.  This argument is also concerning considering [Wife's] testimony as to her self-reported household expenses which did not include the entirety of her household or personal expenses.  [Wife's] own testimony showed that she had approximately $359,000.00 available to her through her father, [B.T.].  Furthermore, [Wife's] own testimony showed that she is enjoying a lifestyle that is well out of reach for someone making the minimum wage, which [Wife] argues that she

should be imputed to for support purposes. Accordingly, the Court finds that [Wife's] income for the support purposes is approximately $359,000.00 and could possibly be more than that amount.

June 30, 2023 Divorce Decree

{¶ 10} Included in that amount were monthly expenses of $14,736.08 reported by Wife in her final financial disclosure statement and monthly expenses for the marital home of $3,167.88 (total: $214,847.52/year); the yearly value of two prepaid three-year vehicle leases that B.T. paid for Wife and the parties' oldest daughter (total $18,000), and approximately $125,000 in attorney fees over a one-year period. The court ordered Wife to pay Husband spousal support in the amount of $4,600 per month for a term of 72 months.

{¶ 11} With respect to the custody of the children, Wife requested shared parenting and filed a plan on March 9, 2023. Husband filed a brief in opposition on March 16, 2023, and requested to be named the sole residential parent and legal custodian of the parties' minor children. After a thorough review of the evidence at trial, the relevant statutory factors, and the recommendation of the appointed guardian ad litem ("GAL"), the court found shared parenting to be in the best interests of the children. The court also issued a separate order appointing a parenting coordinator for a period of 36 months.

{¶ 12} The court ordered that Husband would be entitled to claim the children as dependents for federal income tax purposes. The court ordered Wife to pay child support to Husband in the amount of $3,334.11 per month ($1,316.61 per month per child) plus cash medical support of $74.36 per month ($25.72 per month

per child) (total: $3476.64 per month).  The court also ordered the parties to split the GAL's fees, with Wife paying 75 percent and Husband paying 25 percent.

{¶ 13} The trial court then found that Wife did not have any attachable income and had the ability to post a cash bond in the amount of $10,000.  Finally, the trial court found that it was appropriate to order Wife to pay some of Husband's attorney fees in the amount of $100,000 due to her "ability to pay, the extended litigation, and failure to turn over financial documents related to her income and assets." June 30, 2023 Divorce Decree.

## Law and Analysis

{¶ 14} For ease of analysis, we will address the assignments of error out of order and in combination where necessary.

## Personal Jurisdiction

### Standard of Review

{¶ 15} In his first assignment of error, Husband argues that Wife did not properly serve him with the complaint and that the trial court accordingly did not have personal jurisdiction.  Where a court lacks personal jurisdiction over a party, the resulting judgment is void ab initio.  *Tomcho v. ALTL, Inc.*, 2018-Ohio-4613, ¶ 18 (8th Dist.).  We review a trial court's decision regarding personal jurisdiction under a de novo standard of review.  *Natl. City Bank v. Yevu*, 2008-Ohio-4715, ¶ 6 (8th Dist.) citing *Lewis v. Horace Mann Ins. Co.*, 2003 Ohio 5248, ¶ 18 (8th Dist.). De novo review allows this court to review the assigned error without deference to

the trial court's decision. *Thomas v. PSC Metals, Inc.*, 2018-Ohio-1630, ¶ 12 (8th Dist.).

**<u>Analysis</u>**

{¶ 16} In his motion to dismiss, Husband alleged that Wife's process server served him in New York but only gave him a single piece of paper titled "Summons of Civil Action." Per Husband, he did not receive the complaint or any other documentation from the process server. In her brief in opposition, Wife agreed that initially the process server only gave Husband the summons. However, a half hour later, after receiving the full packet, the process server went back and served Husband with the complete packet.

{¶ 17} The trial court scheduled an evidentiary hearing for April 29, 2019. Neither party provided a transcript for this hearing to this court. "Absent a transcript of the proceedings or its alternatives, a court will presume regularity and the validity of judgment of the trial court." *Ali v. Vargo*, 2005-Ohio-3156, ¶ 21 (8th Dist.), citing *Ostrander v. Parker-Fallis Insulation*, 29 Ohio St.2d 72, 74 (1972). However, in the instant case, although the transcript was not provided, the trial court determined that Husband waived his right to an evidentiary hearing.

{¶ 18} Per the court's journal entry, at the outset, the court called on Husband's counsel to present his evidence demonstrating improper or incomplete service. Counsel objected arguing that the burden of proof rested with Wife and that she must demonstrate proper service first. The trial court attempted to explain the distinction between the burden of proof and the burden of going forward; however,

Husband's counsel continued to argue with the court and refused to present Husband's case. The trial court terminated the hearing and elected to rule on the motions. As we do not have a transcript, to the extent that the trial court found that Husband waived his right to a hearing, we must presume regularity in the proceedings and will presume that the trial court acted appropriately in finding a waiver.

**Out-of-State Service**

{¶ 19} Husband challenged service, in part, on the grounds that he was improperly served while out of the State of Ohio. At the time of service, Husband was on vacation in Niagara Falls, New York with his three children.

{¶ 20} When the civil rules governing service are followed, there is a presumption of proper service. *King v. Water's Edge Condominium Unit Owners' Assoc.*, 2021-Ohio-1717, ¶ 25 (8th Dist.). However, this presumption can be rebutted where the complaining party "presents sufficient evidentiary-quality information demonstrating that service was not accomplished." *Id.* Generally, when a complaint is filed, the clerk "shall forthwith issue a summons for service upon each defendant listed in the caption." Civ.R. 4(A). Service may be made either by certified or express mail, personal service, or residential service. Civ.R. 4.1(A). Civ.R. 4.3 allows service of process out of State in the manner prescribed in Civ.R. 4.1(A) to a "resident of this State who is absent from this State." Civ.R. 4.3(A) and (B). Civ.R. 4.3 also defines who may personally serve someone who is outside of the State, i.e., "any person not

less than eighteen years of age who is not a party and who has been designated by order of the court to make personal service of process." Civ.R. 4.3(B)(2).

{¶ 21} A review of the docket reveals that, on Wife's motion, the court appointed SACS Consulting & Investigating Services, Inc. and its agent, Roger McCoy ("McCoy"), as process servers on March 21, 2019, to serve copies of the complaint for divorce, parenting proceeding affidavit, mutual restraining orders, and any other relevant documents. Wife also filed instructions for personal service as required under Civ.R. 4.3(B)(1) and (2). Wife attached an affidavit to her filing averring that McCoy met the requirements for an out-of-State process server. Finally, McCoy filed a return of service on March 22, 2019, stating that he personally served Husband on March 21, 2019, with the summons and complaint, the mandatory disclosure order, mutual restraining order, and other orders relevant to the case. The filing also included a certified copy of the trial court's journal entry appointing the special process server. The certification was dated March 22, 2019.

{¶ 22} Based on the foregoing, we find that the record was sufficient to raise the presumption of proper out-of-State service of process.

**Insufficient Service**

{¶ 23} In addition to challenging out-of-State service, Husband alleged that the process server did not serve him with the documents required by the civil rules. Pursuant to Civ.R. 4, "[a] copy of the complaint shall be attached to each summons." Civ.R. 4(B). Because Husband effectively waived his right to a hearing, the only evidence to challenge the presumption of service is the affidavit attached to his

motion to dismiss. In it, Husband alleged that McCoy served him with the summons only and did not attach the complaint or any of the other court orders listed in the return of service.

{¶ 24} Once the record established proper service, Husband had the burden of going forward to rebut that presumption. A self-serving affidavit is insufficient evidence of nonservice. *Graham Dealerships, CI v. Chavero*, 2008-Ohio-2966, ¶ 12 (5th Dist.). Husband argues that where a defendant submits a sworn statement that he never received the complaint that is uncontested by the plaintiff, it is a reversible error for the trial court to ignore it citing *Kassouf v. Barylak*, 2023-Ohio-314 (8th Dist.). Preliminary, Wife admitted that her process server initially served Husband with only the summons, but that within 30 minutes, McCoy received the full set of documents and properly served Husband. Furthermore, in *Kassouf*, while the defendant's averment of failed service was uncontested, the trial court summarily denied the motion to dismiss as untimely. In that context, this court found that, while a hearing is not always required, it was reversible error for the trial court to deny the motion without a hearing to determine the validity of the defendant's statement. *Id.* at ¶ 24. In contrast, the trial court in this case attempted to conduct a hearing to address both parties' claims; however, due to what the trial court called counsel's "contumacious" conduct, counsel effectively waived his client's right to a hearing.

{¶ 25} In the instant case, had the hearing gone forward, the trial court would have had the opportunity to hear the testimony of both witnesses, weigh their

credibility, and determine whether Husband was properly served. *See Bank of New York Mellon v. Maxfield*, 2016-Ohio-2990, ¶ 16 (12th Dist.). For instance, Husband could have further explored the attachments to Wife's filings, which showed one document was certified the same day the return of service was filed. As it stands, the evidence before the trial court amounted to two parties disagreeing about whether service was accomplished without any additional evidentiary support.

{¶ 26} Based on the foregoing, Husband's first assignment of error is overruled.

**Motion to Disqualify Counsel**

{¶ 27} In Husband's second assignment of error, he alleges the trial court erred when it failed to grant his motion to disqualify Wife's attorneys.

**Standard of Review**

{¶ 28} A trial court has broad discretion when considering a motion to disqualify counsel. *Barnett Mgt. v. Columbia Res. Homeowners' Assn.*, 2023-Ohio-4220, ¶ 11 (8th Dist.). The court similarly has broad discretion to exercise its "inherent authority to supervise members of the bar appearing before it." *Id.*, citing *Wynveen v. Corsaro,* 2017-Ohio-9170, ¶ 14 (8th Dist.). Accordingly, we review the trial court's decision for an abuse of discretion and will only reverse it if the decision was unreasonable, unconscionable, or arbitrary. *Id.* at ¶ 12. Further, we are mindful that disqualification is a drastic measure that should not be used unless absolutely necessary. *Legal Aid Soc. v. W&D Ptnrs. I, LLC*, 2005-Ohio-4130, ¶ 17 (8th Dist.) citing *Spivey v. Bender*, 77 Ohio App.3d 17, 22 (6th Dist. 1991).

## Analysis

{¶ 29} On January 21, 2020, Wife filed a motion for an independent psychological evaluation. In the motion, Wife's counsel asked that both parties submit to an independent psychologic and custody evaluation to be conducted by Dr. Farshid Afsarifard ("Dr. Afsarifard"). The firm representing Wife included in the motion notification that a partner in the firm was representing Dr. Afsarifard in his role as an expert in an unrelated divorce case. Per the motion, the partner's representation was limited to appearing with Dr. Afsarifard at a deposition. Accordingly, the firm argued there was no conflict of interest. Husband did not file a response to this motion.

{¶ 30} On July 24, 2020, Wife filed a motion to compel Husband's compliance with the evaluation. In response, on August 5, 2020, Husband notified Wife's counsel via email that he would not waive any conflict posed by the firm representing both Wife and Dr. Afsarifard. On August 6, 2020, Husband filed a brief in response to the motion to compel and formerly raised his objection to the dual representation. The trial court addressed the alleged conflict in its entry granting Wife's motion to compel, finding that Husband had

> failed to raise an issue of conflict; therefore, to the extent [Husband] has not submitted to date to the evaluation by Dr. Afsarifard based on an alleged conflict, that conflict is waived and [Husband] is again ordered to participate in the evaluation.

Trial Court's Aug. 7, 2020 Journal Entry.

{¶ 31} On March 10, 2023, Husband filed a motion to disqualify Dr. Afsarifard as a custody evaluator in this matter, citing the ongoing litigation in the other divorce case. Husband also subpoenaed Wife's father B.T. and his financial records. On March 13, 2023, the Wife's firm filed a notice of appearance on behalf of B.T. On March 14, 2023, Husband filed a motion to disqualify the firm, alleging there was a conflict of interest posed by the firm representing Wife, B.T., and Dr. Afsarifard. The parties argued the issues at trial. Husband alleged that Wife's counsel representation of Dr. Afsarifard was barred based on this court's holding in *Smith v. Smith*, 2019-Ohio-990 (8th Dist.). The court ultimately found that the holding in *Smith* was distinguishable from the facts of this case and that disqualification of the firm was unwarranted. With respect to any conflict posed by the firm representing both Wife and her father, the court found that any violation of due process belonged to Wife noting:

> The potential conflict, the potential conflict relates to [Wife's] attorney representing both a witness and her. So it's up to – it would be up to her to raise it.
>
> So if there is a potential conflict, I mean, that's an issue. But apparently they, they're saying which I would like to see that there's a waiver on that because it's his client's interest, it's his client's potential conflict because it's [Wife's] attorney that represents both [Wife] and a potential fact witness.
>
> Now [B.T.] is coming in. He will testify, and you will be able to cross-examine him. But at some point he could have an adverse position to your client and at that point it's my understanding you're going to then not be [B.T.'s] attorney.
>
> Counsel: Absolutely.
>
> Court: Okay. So I'm going to deny your motion to disqualify . . . .

Mar. 14, 2023, tr. 70-71.

{¶ 32} The firm subsequently presented the court with the signed consent forms.

{¶ 33} In his brief before this court, Husband argues that Wife's firm continued representation of Wife, B.T., and Dr. Afsarifard violated Ohio Prof.Cond.R. 1.7, which provides:

> (a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
>
> (1) the representation of that client will be directly adverse to another current client;
>
> (2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

Ohio Prof.Cond.R. 1.7(a).

{¶ 34} Husband, as the party moving for disqualification, bears the burden of demonstrating that disqualification is necessary. *Barnett Mgt.* at ¶ 13 citing *WFG Natl. Title Ins. Co. v. Meehan*, 2018-Ohio-491, ¶ 24 (8th Dist.). Generally, "a stranger to an attorney-client relationship lacks standing to complain of a conflict of interest in that relationship." *Morgan v. N. Coast Cable Co.*, 63 Ohio St.3d 156 (1992), syllabus. Courts typically do not disqualify an attorney based on conflict of interest "unless there is (or was) an attorney client relationship between the party seeking disqualification and the attorney the party seeks to disqualify." *Id.* at 159. The court also recognized, however, that "an attorney's obligations and

responsibilities to a party, including the attorney's financial, business or personal interests can, in appropriate circumstances, be a basis for disqualification." *Id.* at 160.

{¶ 35} Husband argues that the dual representation prevented him from obtaining necessary information regarding Wife's income, assets and mental-health issues. Specifically, the firm's representation allegedly prevented Husband from obtaining financial records from B.T. that would establish Wife's concealment and/or liquidation of assets during the proceedings. Furthermore, the dual representation allowed Wife to conceal her mental-health issues that might impact her ability to properly care for the minor children.

{¶ 36} Preliminarily, Wife's counsel informed the court that it had notified all clients of the representation and complied with Prof.Cond.R. 1.7(b), which requires written informed consent and assurance that the lawyer can continue to provide competent and diligent representation to each client. Prof.Cond.R. 1.7(B)(1) and (2).[1] Secondly, Husband has failed to meet his burden of establishing the need for disqualification. Husband has not shown that the firm's clients were directly adverse to one another, nor has Husband shown that there was a substantial risk that the firm's ability to represent each client would be "materially limited" by the representation. Husband's concerns about the effect on his ability to gather evidence does not establish a conflict between the firm's clients. Additionally, the

---

[1] Prof.Cond.R. 1.7(B)(3) provides additional requirements that did not arise in this case.

record reflects that B.T. complied with subpoenas for his financial records and Husband had the opportunity to cross-examine him on them. Further, Husband alleges that Wife's counsel had a "pecuniary interest" in representing Wife and therefore had an interest in controlling the testimony B.T. presented at trial. This claim is not substantiated by the record, and Husband does not cite to the record in support of this claim. Additionally, Wife fully complied with Dr. Neuhaus' evaluation. Husband has not indicated what additional mental-health information he lacked.

{¶ 37} Husband again relies on the holding in *Smith*, 2019-Ohio-990, to support his argument. *Smith* is loosely comparable to this case because it involved an attorney representing a party and a potential fact witness. In *Smith*, the court appointed a GAL. The GAL was litigating her own divorce in the same court and was represented by counsel. Subsequently, the husband in the *Smith* case obtained a new lawyer, the same lawyer representing the GAL in her divorce case. The court immediately noted the conflict and notified the parties that either they could resolve the custody issues such that the GAL would no longer be needed, the wife could waive the conflict, or the attorney would have to leave the case. Ultimately, the custody issues were unresolved, the wife refused to waive the conflict, and the attorney did not leave the case. The trial court disqualified the attorney.

{¶ 38} This court found that disqualification was appropriate because it was a violation of Prof.Cond.R. 1.7(a)(1) and (2) for counsel to "simultaneously represent: (1) a client in a domestic-relations proceeding; and (2) the GAL in that

domestic relations proceeding in the GAL's personal matter." *Smith* at ¶ 29. The court recognized that because of the dual representation the GAL's recommendation would be tainted. The court noted:

> It is conceivable in the case at hand that the GAL's recommendation regarding Raymond and Karyn's minor child is adverse to Raymond. It is also conceivable that, should this scenario come to fruition, [the law firm's] representation of the GAL would be compromised or "weakened." Additionally, if the GAL's recommendation regarding the minor child is favorable to Raymond, it creates the appearance that she may be acting favorably toward Raymond's counsel, who is, of course, her personal counsel in another matter.

*Smith* at ¶ 20.

{¶ 39} *Smith* is clearly distinguishable from the facts of this case when comparing the representation of Wife and B.T. Unlike a GAL, B.T. is not a neutral party. He is Wife's father and there is an expectation that, whether consciously or unconsciously, he will be biased in favor of his daughter. Both sides questioned B.T. and had the opportunity to develop their case through his testimony. Again, B.T.'s representation was not adverse to his daughter's. Husband's argument is that the dual representation was adverse to him, which again does not merit disqualification of Wife's counsel.

{¶ 40} Dr. Afsarifard, as an expert witness, was closer to the GAL's role in *Smith* than B.T.; however, his role in this case is still distinguishable. Wife's counsel never represented Dr. Afsarifard in a personal capacity, they only represented him in his role as an expert. Although the representation apparently extended beyond one deposition, the attorney representing Dr. Afsarifard did not participate in this

case. Additionally, there was no evidence that the two divorce cases were connected such that the representation of Dr. Afsarifard would be compromised by his testimony in this case nor was there evidence that Wife's and Dr. Afsarifard's interests were directly adverse. Finally, while Dr. Afsarifard was appointed by the court, he was appointed at Wife's request. Additionally, Husband had requested the appointment of his own expert, Dr. Neuhaus, who had extensive access to Wife and her medical records. Based on the foregoing, Husband lacked standing to challenge the representation and failed to establish that a conflict existed that necessitated disqualification of the firm.

{¶ 41} Accordingly, Husband's second assignment of error is overruled.

**Distributive Award for Financial Misconduct**

{¶ 42} In his third assignment of error, Husband argues the trial court abused its discretion by failing to issue a distributive award to him based on Wife's financial misconduct. Husband alleged that Wife committed financial misconduct when she liquidated funds from her trust accounts, failed to disclose certain accounts, and failed to completely disclose her monthly expenses and her source of income.

{¶ 43} Pursuant to R.C. 3105.171(E)(4) and (5), a domestic relations court "may" issue a distributive award, accordingly, the decision whether to compensate a party for a violation of R.C. 3105.171(E) is reviewed for an abuse of discretion. *Lunger v. Lunger*, 2017-Ohio-9008, ¶ 11 (7th Dist.).

{¶ 44} A distributive award is "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support . . . ." R.C. 3105.171(A)(1). A court may issue a distributive award to compensate a spouse for the financial misconduct of the other spouse if they, including but not limited to, dissipate, destroy, conceal, or fraudulently dispose of assets. *A.E. v. J.E.*, 2024-Ohio-1785, ¶ 28 (8th Dist.), citing R.C. 3105.171(E)(4). Additionally, the court may issue a distributive award if "a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses." R.C. 3105.171(E)(3) and (5). The spouse claiming financial misconduct bears the burden of proof. *A.E. v. J.E.* at ¶ 28, citing *Victor v. Kaplan*, 2020-Ohio-3116, ¶ 138 (8th Dist.). In determining whether to issue a distributive award, "[t]he trial court must look to the reasons behind the alleged conduct and determine whether the alleged wrongdoer profited from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets." *Lunger v. Lunger*, 2017-Ohio-9008, ¶ 12 (7th Dist.).

{¶ 45} "A spouse commits 'financial misconduct' where he or she 'engages in intentional conduct by which he or she either profits from the misconduct or intentionally defeats the other spouse's interest in marital assets.'" *Kaplan*, 2020-Ohio-3116, ¶ 138 (8th Dist.), quoting *Rodgers v. Rodgers*, 2017-Ohio-7886, ¶ 30 (8th Dist.).

{¶ 46} In the instant case, the trial court found that the accounts Wife dissipated were her separate property. Husband did not present any evidence that he had an interest in those accounts nor that Wife's conduct disposed of his assets or affected the value of any marital property. Thus, he has failed to establish that Wife acted in a way that profits her or intentionally interfered with Husband's property rights. Husband also argues that Wife failed to disclose her income and accounts in order to defeat his claims for spousal and child support. While it was suggested that Wife had undisclosed accounts, their existence was merely speculative. The testimony at trial was that Wife's expenses were paid solely by her father. The evidence merely established that Wife received money from her father to support her lifestyle and that she used her trust funds to pay her attorney's fees. Accordingly, we cannot say the trial court abused its discretion when it elected not to issue a distributive award. Husband's third assignment of error is overruled

**Negative Inferences for Withholding Evidence**

{¶ 47} In his fourth assignment of error, Husband argues that the trial court abused its discretion when it failed to make negative inferences concerning Wife's true income for the purposes of calculating support. A court may make a negative inference when a party who has control over certain evidence fails, without a satisfactory explanation, to produce that evidence. *Roetenberger v. Christ Hosp. & Anesthesia Assocs. of Cincinnati*, 2005-Ohio-5205, ¶ 21 (1st Dist.). Normally, there would need to be a strong showing of malfeasance, or at minimum gross neglect, before approving a negative inference charge in a jury trial. *Id.* Husband argues

that the evidence he gathered shows that B.T. was receiving money from a number of accounts from which he funneled money to Wife. Accordingly, he alleges, without proof, that some of those accounts must belong to Wife. Husband's belief that Wife held accounts and withheld that information is insufficient to establish Wife had that evidence and withheld it with purpose to deceive. The trial court did not abuse its discretion when it failed to make a negative inference with respect to Wife's income.

{¶ 48} Accordingly, Husband's fourth assignment of error is overruled.

**Shared Parenting and the Parenting Coordinator**

{¶ 49} In his sixth and seventh assignments of error, Husband challenges the trial court's award of shared parenting and the appointment of a parenting coordinator.

{¶ 50} A trial court's decision granting a shared parenting plan enjoys a presumption of correctness and is within the sound discretion of the trial court. *Haas v. Bauer*, 2004-Ohio-437, ¶ 20 (9th Dist.). Accordingly, we review that decision for an abuse of discretion. *Id.* When either parent presents a shared parenting plan, it is within the discretion of the court to accept it as long as the court determines the plan is in the best interest of the children. *Id.* at ¶ 21.

{¶ 51} The trial court engaged in a detailed review of the best-interest factors enumerated in R.C. 3109.04(F). Husband expresses concern about Wife's mental health and her various sexual encounters that he uncovered just prior to the divorce filing. The court addressed those concerns in its decision and found that Wife's

conduct was "fundamentally tied to her mental health." The court found that with continued treatment, Wife would be able to communicate better with Husband and parent the children. Furthermore, the court noted that the parties had participated in two agreed shared parenting plans, culminating in the shared parenting agreement in place since 2021. The trial court thoroughly reviewed Wife's mental-health history, her behavior just prior to the divorce filing, and other factors. Wife submitted to psychological and custody evaluations by two experts, but only Wife's expert testified at trial. The trial court noted that it had not received all of the records concerning Wife's mental health and evaluations. Ultimately, both Wife's expert and the court-appointed GAL recommended the shared parenting plan submitted by Wife. The GAL noted that the couple have a contentious relationship, but "despite the daggers that they throw at each other, they both have put their children first throughout this process to make sure that they continue to thrive." June 21, 2023 tr. 12. Accordingly, the trial court did not abuse its discretion when it ordered a shared parenting plan.

{¶ 52} In addition to ordering a shared parenting plan, the trial court ordered the appointment of a parenting coordinator for a period of 36 months. Husband challenges the order, arguing that Wife will not act in good faith and will use her greater resources to engage in "frivolous fights" against Husband. Further, Husband argues that the court's order does not allow for meaningful review because the trial court has discretion on whether it will hear either party's objections to the parenting coordinator's decisions. Neither of these issues are ripe for judicial

review. The record reflects that both parties testified about their difficulties communicating with one another, Husband claiming that Wife harbored animosity and hostility towards him, and Wife claiming Husband failed to respond to her questions through the trial court's family communication app. The trial court's decision to appoint a parenting coordinator was supported by the evidence in the record. How the parties may conduct themselves with the parenting coordinator is not something this court can anticipate.

## Distribution of Property and Spousal and Child Support

{¶ 53} Several assignments of error from both parties challenge the trial court's division of property and support orders. For ease of analysis, we will discuss these issues together.

{¶ 54} A trial court is required to create an equal division of property, however, "'if an equal division of property is inequitable, the court must divide the marital property equitably.'" *Herrera v. Phil Wha Chung*, 2021-Ohio-1728, ¶ 36 (8th Dist.), quoting *Neville v. Neville*, 2003-Ohio-3624, ¶ 5, citing R.C. 3105.171(C)(1). We review the trial court's division of marital property for an abuse of discretion. *Id.*, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989).

{¶ 55} Preliminarily, the trial court must determine what constitutes marital property and what constitutes separate property before distributing property in a divorce proceeding. *Id.* ¶ 37, citing *Comella v. Comella*, 2008-Ohio-6673, ¶ 38, citing R.C. 3105.171(B). "The determination of whether property is marital or separate is a mixed question of law and fact that will not be reversed unless it is

against the manifest weight of the evidence." *Id.*, citing *Kobal v. Kobal*, 2018-Ohio-1755, ¶ 27 (8th Dist.). A court examining the manifest weight of the evidence "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial order." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Once the trial court has characterized the property as marital or separate, assuming that determination is supported by the manifest weight of the evidence, "the reviewing court will not disturb the trial court's distribution of the property absent an abuse of discretion." *Herrera* at ¶ 37, citing *Kobal* at ¶ 27.

{¶ 56} We start with Wife's seventh assignment of error that challenged the trial court's allocation of interests in the marital home. Wife argues that evidence of Husband's separate interest in the marital home was insufficiently proven. Further, Wife alleges that the trial court did not recognize her separate interest in the marital property acquired by making payments to the mortgage.

{¶ 57} A party that claims an asset is separate property has the burden of proving that claim by a preponderance of the evidence. *Rossi v. Rossi*, 2014-Ohio-1832, ¶ 43 (8th Dist.). "Preponderance of the evidence means the greater weight of the evidence." *Halter v. Dagostino*, 2022-Ohio-1069, ¶ 11 (8th Dist.). Separate property does not lose its identity as separate if it is commingled with marital property as long as its separate identity can be traced. *Rossi* at ¶ 43. Therefore,

when separate property is commingled with marital property, its traceability becomes relevant. *Lichtenstein v. Lichtenstein*, 2020-Ohio-5080, ¶ 21 (8th Dist.).

{¶ 58} Prior to the marriage, Husband's mother and uncle owned the marital home. In 2002, uncle sold his interest in the property to Husband's mother and Husband. Husband introduced the deed of this transfer as proof and testified that he paid $150,000 for the property. Wife argues that Husband did not prove that he paid any money for the house and therefore his separate interest was not traceable. Whether or not Husband actually paid his uncle for the property, the deed established the transfer occurred prior to the marriage and was sufficient proof. R.C. 3105.171(A)(6)(a)(ii) ("Separate property means all real and personal property and any interest in real or personal property that is found by the court to be . . . acquired by one spouse prior to the date of the marriage."). R.C. 3105.171(H) provides an exception, noting that *"except as otherwise provided in this section*, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." (Emphasis added.) R.C. 3105.171(H) Husband therefore established that he acquired an interest in what became the marital home prior to the marriage.

{¶ 59} However, the trial court's finding that Husband acquired a 50 percent share of the residence was not supported by the manifest weight of the evidence. The deed transferred the uncle's 50 percent share of the property to Husband as an unmarried man and to Husband's mother. Since mother already held a 50 percent interest in the property, the transfer gave Husband a 25 percent interest in the home.

The couple acquired a 75 percent interest in the home when they purchased the remainder of the property after the marriage. Accordingly, the trial court erred when it found that Husband had acquired a separate 50 percent interest in the property.

{¶ 60} In addition, Wife argues that her father gave her money both during the marriage and after she filed for divorce that was used to pay the down payment on the house and the mortgage, giving her a separate interest in the marital property. However, other than alleging payments, Wife did not provide any evidence that would allow the trial court to trace her separate interest in the property. Wife failed to establish that she had obtained a separate interest in the property by a preponderance of the evidence. Husband, however, only established a separate 25 percent interest in the marital property. Accordingly, Wife's seventh assignment of error is sustained as to the trial court's division of the marital residence.

{¶ 61} Wife, in her ninth assignment of error, also challenges the trial court's order finding that she had a Nordstrom 401K account that should be split evenly between the parties. We agree. Wife testified that she did not have a Nordstrom 401K and there was no evidence presented that established the existence of such an account. Even if, as Husband argues, the trial court rejected Wife's generalized denial of the account, the existence of the account still needed to be proven by a preponderance of the evidence. Furthermore, Wife testified that she worked at Nordstrom's from 1999 until 2005. If a Nordstrom 401K existed, the trial court still needed to determine if any portion of that account was Wife's separate property.

Accordingly, the trial court abused its discretion when it ordered that the Nordstrom 401K be divided equally between the parties. Wife's ninth assignment of error is sustained.

{¶ 62} In her first assignment of error, Wife challenged the trial court's finding that her income was $359,000. In her second and third assignments of error, Wife argued that the trial court's income calculation improperly imposed a duty on Wife to pay spousal and child support and additionally imposed a duty on B.T. to pay that child and spousal support since Wife had no income other than the money she received from B.T.

{¶ 63} A trial court, at either parties' request and after the disbursement of property as marital or separate, "may award reasonable spousal support to either party." R.C. 3105.18(B). A trial court has broad discretion to determine whether spousal support is reasonable, and this court will not reverse that decision absent an abuse of discretion. *Kerkay v. Kerkay*, 2024-Ohio-3185, ¶ 61 (8th Dist.). While there is no formula to determine the amount of spousal support, the trial court is required "to consider all 14 factors of R.C. 3105.18(C) and 'not base its determination upon any one of those factors taken in isolation.'" *Id.* at ¶ 60.

{¶ 64} The record does not reflect that the trial court considered all of the factors in R.C. 3105.18(C). R.C. 3105.18(C) requires the court to consider

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 65} The trial court's income determination was based on one year of Wife's expenses that her father paid. More than a third of that amount, $125,000, was attorney fees B.T. paid on Wife's behalf. Wife argued that since she was

unemployed the trial court should have imputed her income as full-time minimum wage. The trial court disagreed, not based on any factor in R.C. 3105.18(C), but on the fact that Wife had $359,000 "available" to her. The court made this finding while also acknowledging that Wife was unemployed and that B.T. supplied all of the money that paid Wife's expenses. Furthermore, while the trial court acknowledged that Wife was unemployed since 2005, the record does not reflect that the court tied its income calculation to Wife's education, salary, or any other factor that would determine her income potential. Certainly, there was no evidence in the record that Wife could earn $359,000 per year.

{¶ 66} Finally, the trial court contrasted the fact that Wife lived well beyond her means, and yet Wife suggested the court impute her income to a full-time minimum wage job. The trial court did not find Wife's testimony credible when she suggested the court should impute a minimum wage income to her. We defer to the trial court's finding on Wife's credibility; nevertheless, there was no evidence that Wife had any source of income in her own name. Accordingly, in order for the trial court to order spousal support on this record, the only possible conclusion is that B.T. would be responsible for paying spousal support to Husband. Therefore, the award of spousal support was unreasonable and an abuse of discretion.

{¶ 67} Wife also does not have $359,000 in income for the purpose of child support. The child support statute defines income as

> (a) For a parent who is employed to full capacity, the gross income of the parent;

(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

R.C. 3119.01(C)(10).

{¶ 68} "Gross income" however does not include nonrecurring or unsustainable income or cash flow items, which is defined as "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(13)(e) and (14). The trial court abused its discretion when it considered only one year of expenses, paid by a spouse's father, that included a nonrecurring fee, i.e., $125,000 for attorney's fees, and where there was no evidence the income would or could continue for any length of time.

{¶ 69} B.T. supplemented the couple's income during the marriage, but there was no evidence submitted as to how much money he supplied. B.T. testified that he provided support the entire time, but that it increased over the years as the family grew. Even so, there was no evidence that B.T. provided yearly support in the amount of $359,000 for the entirety of the marriage. Nor was there evidence that B.T. could maintain that level of support for a sustained period of time. Accordingly, the trial court abused its discretion when it found Wife had an income of $359,000 for child support.

{¶ 70} The trial court's decision is concerning because by classifying B.T.'s gifts as income, the trial court improperly shifted the responsibility of support to a

nonparty who had no legal obligation to support either party. We could not find any case that applied parental gifts to spouses in this way.

{¶ 71} A review of cases where one of the factors was a parent or parents providing financial assistance to an adult child establishes that the court's review these situations on a case-by-case basis. For example, in *Buck v. Buck*, 2018-Ohio-3704 (6th Dist.), the wife's mother gave the couple over $400,000 during the marriage, the majority of which Wife deposited into the couple's joint bank account. *Id.* at ¶ 27. Because there were marital funds in that account and the couple paid for a variety of bills from it, the court found that the gifts were not traceable to their separate origin and were therefore marital property. *Id.* at ¶ 30.

{¶ 72} In *Taub v. Taub*, 2009-Ohio-2762 (10th Dist.), husband received money from a trust fund as well as payments from his parents' personal accounts during the marriage. The trial court included the money from trust funds when it calculated husband's income but did not include gifts from husband's parents. *Id.* at ¶ 52. In that case, the husband was the beneficiary of the trust and received money directly from his trust funds. The husband in that case did not challenge the trial court's findings with respect to the payments from his parents, either their amount or their sources. The court of appeals did not discuss this calculation but affirmed the trial court's income calculation that excluded the parents' gifts to husband during the marriage.

{¶ 73} Finally, in *Zhuravlyov v. Bun*, 2020-Ohio-4108 (11th Dist.), the evidence established that the wife received significant financial assistance from her

parents both during the marriage and after the divorce filing. Despite that, when determining spousal support, the trial court looked at the wife's education, a bachelor's degree in business administration, and current employment, working for her family's restaurant for $700 a month, and found that she was voluntarily underemployed. Based on these and other factors, the trial court imputed the wife's income at the level of a full-time minimum wage job. *Id.* at ¶ 32. The court of appeals affirmed this finding. *Id.* Additionally, the court based its spousal support[2] order on the couples' respective incomes and potential employment, ultimately affirming the trial court's order that required the husband to pay spousal support. Nevertheless, the trial court overruled the wife's argument that the spousal support should have been increased and ordered for a longer duration. The court found that it was appropriate to consider the significant financial assistance the wife received from her parents in determining the appropriate level of spousal support. *Id.* at ¶ 42.

{¶ 74} On the record before us, it was error for the trial court to find that Wife had an income of $359,000. Accordingly, Wife's first assignment of error is sustained. Additionally, her second and third assignments of error that challenge the effect of the award on B.T. and the child support and spousal support awards are also sustained. Further, Husband's fifth assignment of error challenging the trial court's child and spousal support calculation is overruled.

---

[2] The wife also challenged an order requiring her to pay child support; however, the court of appeals did not consider it because the wife did not brief the issue as required by App.R. 16(A)(7).

**Attorney's Fees, Bond, and GAL Fees**

{¶ 75} In his eighth assignment of error, Husband argues that the trial court abused its discretion when it failed to award him attorney fees and litigation expenses. The trial court awarded Husband $100,000 in attorney fees. Husband argues the court should have awarded him his full expenses totaling $388,245.34. In her sixth assignment of error, Wife argues that the trial court erred in ordering her to pay attorney's fees at all.

{¶ 76} R.C. 3105.73 governs attorney's fees in divorce cases, stating

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

R.C. 3105.73(A).

{¶ 77} The trial court based its award of attorney's fees on Wife's "ability to pay, the extended litigation, and failure to turn over financial documents related to her income and assets." As a result of our decision reversing the trial court's determination of Wife's income and also the division of marital assets, we must reverse the trial court's order of attorney's fees. On remand, the trial court must reconsider whether attorney's fees are appropriate and equitable given our findings here. *See Ott v. Ott*, 2022-Ohio-2087, ¶ 28 (9th Dist.) (finding that after reversing the trial court's rulings with respect to aspects of its marital property distribution, it was premature to address the appropriate level of other orders out of context with

property distribution). Wife's sixth assignment of error is sustained, and Husband's eighth assignment of error is overruled.

{¶ 78} For the same reason we must sustain Wife's fourth and fifth assignments of error. In the fourth assignment of error, the trial court ordered Wife to post a $10,000 bond with respect to child support because Wife "has no attachable income source and has the ability to post a cash bond." The trial court's ability to pay finding was based solely on its calculation of income that we have reversed. The court also found that the GAL's fees should be divided with Wife paying 75 percent and Husband paying 25 percent. The trial court failed to state the basis for this division and given our findings with respect to Wife's income, we sustain Wife's fourth and fifth assignments of error to allow the court to fashion an equitable remedy.

**Personal Property in the Marital Home**

{¶ 79} In her eighth assignment of error, Wife argues that the trial court should have allowed her to obtain her personal property from the marital home. Wife has not cited to any case law in this section of her brief, nor has she listed the property in question. An appellate court may disregard an assignment of error if the party raising it fails to argue the assignment of error separately in the brief as required by App.R. 12(A) and 16(A)(7). Accordingly, Wife's eighth assignment of error is overruled.

**Right to Claim Children on Federal Income Tax**

{¶ 80} In her tenth assignment of error, Wife challenges the trial court's decision granting Husband the right to claim the children as dependents for federal tax purposes. The trial court has discretion in determining the allocation of tax exemptions and will not be overruled absent an abuse of discretion. *Baker v. Deatrick*, 2024-Ohio-3058, ¶ 8 (3d Dist.). The court's discretion is "guided and limited by R.C. 3119.82." *Id.*

{¶ 81} When the parties do not agree which parent should claim the children as dependents, "the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." R.C. 3119.82.

{¶ 82} Wife testified that she has no income and does not need to pay income taxes. Wife argues that the trial court's finding establishes that it recognized that she did not have any earned income that could be taxed. However, other than a statement that Wife could have benefited from claiming the children on her tax return, Wife has not explained how by citation to the record, case law, or other authority. Accordingly, we disregard this assignment of error as insufficiently briefed. App.R. 12(A); 16(A)(7). Consequently, it is overruled.

**Motion to Quash Subpoena for Expert's Records**

{¶ 83} In her eleventh assignment of error, Wife argues that the trial court abused its discretion when it denied her motion to compel Dr. Neuhaus to comply with a subpoena and in granting Dr. Neuhaus's motion to quash.

{¶ 84} Typically, a dispute over discovery is reviewed under an abuse-of-discretion standard. However, if the issue involves an alleged privilege, which is a question of law, our standard of review is de novo. *Haile v. Detmer Sons Inc.*, 2022-Ohio-2891, ¶ 11 (2d Dist.).

{¶ 85} Wife challenged the ability of Husband to redesignate Dr. Neuhaus as a consulting expert after she participated fully in the doctor's evaluation for over a year. When a party hires an expert solely to assist them for the purposes of trial preparation, the opposing party may not typically discover facts known or opinions held by that expert, by interrogatories or deposition, when the expert is not expected to testify at trial. Civ.R. 26(B)(7)(h).

{¶ 86} In the instant case, Dr. Neuhaus was identified as Husband's expert on January 6, 2020. At that time, he was a testifying expert and was included on Husband's subsequent witness lists. Husband also did not provide Dr. Neuhaus's expert report by the trial court's deadline. In April 2021, after the start of the trial, Husband redesignated Dr. Neuhaus as nontestifying.

{¶ 87} There is an exception to the rule that prevents discovery of a non-testifying expert's information. A party may access the information "as provided in Civ.R. 35(B)" or "by showing exceptional circumstances under which, it is

impracticable for the party to obtain facts or opinions on the same subject by other means." Civ.R. 26(B)(7)(h)(ii). Civ.R. 35(B) applies to a court-ordered examination under Civ.R. 35(A), which did not occur in this case.

{¶ 88} Wife argues that the trial court should not have allowed Husband to redesignate Dr. Neuhaus as consulting after she fully participated in the evaluation. Wife, per her brief, participated in several in-depth interviews with Dr. Neuhaus and submitted to psychological testing over the course of a year, where Dr. Neuhaus questioned her familial mental health history, her history of past abuse, her medical history, her sexual history, and other highly sensitive and protected matters. Wife argues that Husband would not have been entitled to this depth of information.

{¶ 89} The trial court found that, "[w]here, as here, the allocation of parental rights and responsibilities is in dispute, both parents' physical and mental health are 'mandatory considerations for the trial court'" and discoverable. *Friedenberg v. Friedenberg*, 161 Ohio St.3d 98, 2020-Ohio-3345, 161 N.E.3d 546, ¶ 35, 39.

{¶ 90} We agree with the trial court as to this issue. In *Friedenberg*, the majority opinion found that the General Assembly requires "trial courts to consider the mental and physical health of the parties when determining claims for child custody and spousal support." *Id*. at ¶ 35. The court did recognize that it is still the best practice that when parties dispute the relationship of specific doctor-patient communications or other records to the issue of custody or spousal support, courts should conduct an in camera inspection to resolve those disputes. *Id*.

{¶ 91} Preliminarily, we note that the trial court's order did exhort both parties to participate fully in the experts' evaluations. However, the court's order did not prevent Wife from requesting a protective order or asking the court to review requested evidence in camera prior to turning it over to the defense. While the facts of this case are concerning, because certainly it is problematic that the defense expert conducted an in-depth examination of Wife, including interviews with service providers, at any point, Wife could have sought an in camera review or sought to limit the information Husband received.

{¶ 92} Wife also challenged the decision to change Dr. Neuhaus to a non-testifying expert at the last minute. Generally, it is accepted that the opposing party is not entitled to the work product of a nontestifying expert. In situations like this, where a party has participated in an examination for the opposing side's expert, the federal courts have engaged in a case-by-case analysis. A common theme suggests that where the expert's opinion has become part of the case via deposition, dissemination of the report directly or through motion, such as a summary judgment motion, the expert's work has gone beyond the rules of discovery and is no longer protected.

{¶ 93} *See Jordan v. Blount Cty.*, E.D.Tenn. No. 3:16-cv-122, 2021 U.S. Dist. LEXIS 271764 (July 27, 2021) (allowing testimony by defense expert by plaintiff where defense expert had been deposed, expert report disseminated, and defense relied on report to obtain judgment on certain claims); citing *Zvolensky v. Ametek, Inc.*, 142 F.3d 438 (6th Cir. 1998) (plaintiff not allowed to present defense expert's

testimony although they participated in the psychological examination, where expert did not create a report and plaintiff did not depose expert despite a court order allowing deposition.); *Durflinger v. Artiles*, 727 F.2d 888 (10th Cir. 1984) (Plaintiff hired expert, designated him as testifying, then withdrew the designation. During litigation plaintiff did not disclose any information regarding expert's evaluation. The court refused to allow defendants to use expert as a witness finding defense had circumvented the discovery process by approaching the witness obtaining the report and then attempting to call him to testify.); *R.C. Olmstead, Inc. v. CU Interface*, LLC, 657 F. Supp. 2d 899 (N.D. Ohio 2009) (finding that party could not depose the opposition's expert where the expert had been designated as a trial witness then redesignated as a nontestifying witness after disseminating his report); *Niles v. Owensboro Med. Health System, Inc.*, Civ. Act. No. 4:09-cv-61, 2011 U.S. Dist. LEXIS 86932, 2011 WL 3439278 (W.D. Ky. Aug. 5, 2011) (testifying expert who was deposed without objection took the issue out of discovery, thus opposing party was allowed to present testimony of expert but could not mention that expert initially worked for the other side as that information would prejudice the jury).

{¶ 94} It appears from these cases, that generally, where an expert was designated as testifying and then is redesignated as consulting, the opposing party may only access the expert's work, where it had entered the record in some manner. If it has not entered the record, the requesting party needed to meet the requirements of Civ.R. 26(B)(7)(h)(ii). Here, Dr. Neuhaus was not deposed, did not

disseminate a report, and his work was not used to support any dispositive motion. Accordingly, Wife needed to show there were exceptional circumstances and that "it [was] impracticable for the party to obtain facts or opinions on the same subject by other means." Civ.R. 26(B)(7)(h)(ii). Wife failed to meet this burden. Dr. Afsarifard conducted similar evaluations on Wife's behalf and testified at trial. Accordingly, Wife's eleventh assignment of error is overruled.

{¶ 95} In summary, the trial court's judgment is reversed in part and the case is remanded to (1) adjust the award of equity of the marital home to reflect Husband's 25 percent separate interest, and equitably divide the 75 percent marital interest in the home (2) recalculate spousal and child support to make the awards equitable and just; (3) vacate the award of attorney fees to Husband; (4) vacate the order splitting an unproven Nordstrom 401K between the parties; (5) adjust the order splitting the GAL's fees to make the awards equitable and just; and (6) vacate the order for Wife to pay a $10,000 bond for support. The trial court's judgment is affirmed in part with respect to the decisions to (a) deny Husband's motion to dismiss for lack of personal jurisdiction; (b) deny Husband's motion to disqualify Wife's counsel; (c) grant Dr. Neuhaus's motion to quash the subpoena and deny Wife's motion to compel; (d) not issue a distributive award or make negative inferences for alleged financial misconduct; (e) adopt Wife's shared parenting plan; and (f) assign Husband the right to claim the children on his federal income tax return. We also decline to consider (i) Husband's challenge to the appointment of the parenting coordinator because it is not ripe for review and (ii) Wife's challenge

to her ability to obtain personal possessions from the marital home because the challenge was not supported by adequate case law or citations to the record.

It is ordered that the parties split costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR