**[Cite as *S.M. v. A.P.*, 2025-Ohio-2985.]**

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| S.M., | : | |
| Plaintiff-Appellant/<br>Cross-Appellee, | : | |
| | : | No. 113909 |
| v. | | |
| | : | |
| A.P., | | |
| | : | |
| Defendant-Appellee/<br>Cross-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** August 21, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-18-374386

## *Appearances:*

Stafford Law Co., L.P.A., Joseph G. Stafford, Nicole A.
Cruz, and Kelley R. Tauring, *for appellant/cross-
appellee.*

Rosenthal | Lane, L.L.C., Scott S. Rosenthal, and Alarra S.
Jordan, *for appellee/cross-appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} In this split decision, plaintiff-appellant/cross-appellee S.M. and defendant-appellee/cross-appellant A.P. appeal and cross-appeal the judgment entry of divorce issued by the Cuyahoga County Court of Common Pleas, Domestic Relations Division. In its final judgment entry of divorce, the trial court addressed all contested issues, including (1) identifying and dividing marital versus separate assets, (2) valuing certain assets, including a nonprofit business founded by S.M., (3) determining the appropriateness of spousal support, (4) denying an award of attorney fees, and (5) addressing claims of misconduct and a request for a distributive award. After a thorough review of the record, we affirm in part, reverse in part, and remand.

{¶ 2} For the reasons that follow, Part I of this split decision is delivered by Judge Anita Laster Mays and addresses all assignments of error and cross-assignments of error except for cross-assignment of error No. 3. Judges Mary J. Boyle and Lisa B. Forbes both concur in judgment only as to affirming in part, reversing in part, and remanding. Part II, delivered by Judge Mary J. Boyle and joined by Judge Lisa B. Forbes, overrules A.P.'s third cross-assignment of error and affirms the trial court's judgment regarding the division of the lump-sum Social Security derivative payments. Judge Anita Laster Mays dissents with a separate opinion on the issue of the division of Social Security derivative payments and would have sustained A.P.'s third cross-assignment of error. This matter is remanded to the trial court for further proceedings consistent with this opinion.

## PART I

## I. FACTUAL BACKGROUND

**Marriage and Family**

{¶ 3} The parties were married on August 30, 2003, and had one child, V.P. (d.o.b. 3/7/2007), during the marriage. S.M. also had an older daughter from a previous relationship, whom A.P. raised as his own.

**Health and Employment of Parties**

{¶ 4} During their 20-year marriage, A.P. was the primary financial provider until he became disabled due to late-stage lung cancer diagnosed in 2010. A.P. subsequently relied on private disability insurance benefits and Social Security disability for income.

{¶ 5} S.M. did not work outside the home for most of the marriage but anticipated future financial support through inheritance. S.M. also incorporated several businesses during the marriage and is an officer at a nonprofit corporation that she founded in 2017.

{¶ 6} The marital residence ("Kingston Rd.") was purchased with a mortgage in both parties' names just before they were married, for $179,000. S.M. paid the down payment of $48,157.54.

**Separation and Divorce Proceedings**

{¶ 7} In May 2017, S.M. removed funds totaling $108,000 from a jointly titled Schwab account and borrowed $40,000 from a custodial trust account for her

then, minor daughter.  S.M. used the funds to purchase a separate residence on Meadowbrook Road ("Meadowbrook Rd.") and left the marital home.  S.M. initially filed for divorce in December 2017, dismissed the complaint voluntarily in February 2018, and refiled in November 2018.  A.P. was ordered to pay S.M. a total temporary support obligation of $2,148.67 per month, plus a two percent processing charge.  The matter was scheduled for trial that commenced on May 26, 2021.  However, the trial was not completed and was scheduled to be recommenced on January 19, 2022.  On November 15, 2021, A.P.'s counsel requested a continuance from January 19, 2022, until June 1, 2022, because of his serious illness.[1]  Consequently, on January 13, 2022, the case was stayed pending his recovery.  On September 22, 2022, S.M. filed a motion to lift the medical stay and proceed with trial.  The matter was subsequently scheduled for trial that resumed on January 30, 2023, and concluded on February 3, 2023.

## II.  PROCEDURAL HISTORY

**Initial Trial Proceedings**

{¶ 8}  As stated, the initial trial commenced in May 2021 but was interrupted because of the serious illness of A.P.'s counsel.  On February 27, 2023, the magistrate

---

[1] The motion for continuance stated June 1, 2021, in error.

issued a decision, to which both parties objected. On August 8, 2023, the trial court vacated the magistrate's decision because of procedural concerns, ordering a new trial.[2]

**New Trial and Submission by Briefs**

{¶ 9} In December 2023, the parties agreed to submit the case based on briefs, affidavits, and additional documentary evidence, without oral testimony. The trial court issued its final judgment entry of divorce on April 11, 2024. Both parties appealed. The trial court's rulings relevant to this appeal follow.

**Identification of Marital and Separate Property**

{¶ 10} The court found that except for S.M.'s $48,157.54 down payment for the marital residence, both the Kingston Rd. and Meadowbrook Rd. homes were marital property. The trial court ordered both properties sold. S.M. was to receive the first 26.9 percent of the net proceeds of the sale of the Kingston Rd. property for her separate property, used to pay the down payment for the Kingston Rd. home purchase, plus passive interest. The remaining proceeds were to be divided equally between the parties.

{¶ 11} The trial court determined that the Schwab account titled in both parties' names, and managed by Ken Butze, was marital property. The court found that the account was initially funded with S.M.'s separate property. However, during the parties' marriage, S.M. changed the ownership status of the account from

---

[2] Appellant was permitted multiple days to present her case and put on evidence, while appellee was limited to a day and a half to present his case.

being owned solely by her to being owned jointly by the parties. And, there was evidence that marital funds were deposited into the account. Moreover, there was evidence that the margin loan was paid from the account. Neither party presented a summary of the hundreds of pages of account statements establishing any deposits as separate or marital.

{¶ 12} The court ordered the account divided equally between the parties.

**Valuation of Nonprofit Business**

{¶ 13} S.M. operates a not-for-profit organization ("the Nonprofit") that she started in 2017. The Nonprofit provides equipment and space for artists to create their art at reduced costs. S.M. earns income of approximately $18,000 per year from the business. The record reflects tax returns of the Nonprofit for the tax years 2017 through 2022.[3] The tax returns provide that the net assets of the organization are as follows:

2017: $30,914.00
2018: $47,017.00
2019: $19,889.00
2020: $17,812.00
2021: $22,956.00
2022: $22,737.00

{¶ 14} Based on the foregoing, the trial court calculated a six-year average of the Nonprofit's net assets, valuing the nonprofit business at $26,887.50. The court found that the Nonprofit was marital property and awarded A.P. half of its net value.

---

[3] Defendant's exhibits BB and BB-1.

S.M. was ordered to pay A.P. $13,443.75 because of his interest in the Nonprofit, and S.M. was to retain the Nonprofit free and clear from any claim of A.P.

**Division of Marital Property**

{¶ 15} The trial court determined that an equitable division of marital property was warranted. The court ordered any retirement assets earned during the marriage be divided equally between the parties.

**Retirement and Social Security Disability Benefits**

{¶ 16} After A.P. became permanently disabled, he applied for Social Security disability benefits and made a claim against Sedgwick, his private-disability insurance policy. A.P.'s private-disability insurance claim was approved first, and the policy paid a benefit of $8,000 per month. However, this amount was required to be reduced by A.P.'s monthly Social Security disability payment. Once A.P. was eventually approved for Social Security disability payments, his private disability insurance monthly benefit was reduced by the Social Security disability offset, plus an additional sum to "claw back" the overpayment resulting from the lump-sum retroactive Social Security disability benefit payments.

**IOLTA Funds**

{¶ 17} A.P. received two lump-sum retroactive Social Security disability benefit payments. One check was for his benefit in the amount of $66,695.60, and the other check was a derivative benefit for the parties' minor child in the amount of $39,016. The trial court ordered the funds to be held in A.P.'s former attorney's IOLTA account.

{¶ 18} After trial, the trial court ordered the derivative benefit for the parties' minor child to be divided equally between the parties, with each receiving $19,508. The balance of the funds, held by A.P.'s previous counsel, was ordered to be returned to A.P.

**Bank Accounts**

{¶ 19} The court found the following financial accounts to be marital property and ordered that the Huntington Bank accounts held by S.M. — account Nos. x9591, x2985, x3630, x2984, x2427, x8322, x8096, and x9837 — to be divided equally between the parties. Likewise, the accounts held by A.P. — Huntington Bank account Nos. x8632 and x0887, the PNC account No. x1877, the Fidelity account No. x3726, and the Third Federal account No. x2485 — were also ordered to be divided equally between the parties.

**Spousal Support and Imputation of Income**

{¶ 20} S.M.'s income from the Nonprofit is less than the minimum wage, but the trial court found that she had the potential to earn at least minimum wage; therefore, S.M. was imputed $21,008 annual income from employment.

{¶ 21} The trial court also found that S.M. has access to a Schwab trust account established for her benefit with a sum of $2,347,545.97 in May 2023. S.M. is both the trustee and beneficiary of the account, and the funds are her separate property. The trial court determined that the Schwab trust account could earn annual interest of $50,000 at two percent per annum. Therefore, the trial court

imputed S.M. with an additional annual income of $50,000 solely for purposes of determining whether spousal support was appropriate or reasonable.

{¶ 22} In total, the trial court found S.M.'s income for support purposes was $71,008 per year.

{¶ 23} A.P. receives income from a combination of disability benefits, including private-disability benefits from Sedgwick and Social Security disability benefits. The trial court found that A.P. is permanently disabled and his income for support purposes is $96,000 after taxes.

{¶ 24} The trial court found that S.M. had significant resources from an inheritance. Therefore, the court found that spousal support was inappropriate and ordered that neither party shall pay support to the other.

**Attorney Fees**

{¶ 25} Although both parties requested orders of attorney fees in this matter, the trial court declined to award attorney fees to either party. The court determined that both parties contributed to the prolonged nature and significant costs incurred in this matter. Consequently, the court found an award of attorney fees was inappropriate under R.C. 3105.73(A). The trial court concluded that any assets S.M. failed to disclose were separate property. The parties, thereafter, filed timely appeals. S.M. advances five assignments of error, and A.P. advances nine cross-assignments of error for our consideration.

**S.M.'s Assignments of Error**

I. Trial court erred as a matter of law and abused its discretion in its identification of marital and separate property.

II. The trial court's valuation of the non-profit business is contrary to Ohio law and constitutes an abuse of discretion.

III. The trial court erred as a matter of law and abused its discretion by issuing an inequitable division of marital property.

IV. The trial court erred as a matter of law and abused its discretion by failing to award the appellant reasonable and appropriate spousal support and imputing additional income to A.P. in the amount of $50,000.00 annually.

V. The trial court erred as a matter of law and abused its discretion by failing to award S.M. a reasonable award of attorney fees.

## A.P.'s Cross-Assignments of Error

I. The trial court failed to make negative inferences against [S.M.] Appellant.

II. The trial court erred and abused discretion in its findings regarding the real estate.

III. The trial court erred and abused its discretion in ordering the parties to split the derivative benefit check held in [A.P.'s former attorney's] IOLTA account.

IV. The trial court erred and abused its discretion in finding the value of the [Nonprofit] to be only $26,887.50.

V. The trial court erred and abused its discretion in order to split the retirement assets equally.

VI. The trial court erred and abused its discretion in its determination that Appellant's RBC Wealth Accounts were "clearly her separate property."

VII. The trial court erred and abused its discretion in failing to give Appellee any consideration nor reimbursement for the temporary support he paid during the proceedings, despite

Appellant having access to millions of undisclosed assets and income.

VIII. The trial court erred and abused its discretion in failing to issue a distributive award and award of attorney fees for Appellant's financial misconduct.

IX. The trial court erred and abused its discretion in finding that "the above division constitutes an equitable division of the property."

{¶ 26} The assignments of error will be addressed out of order and combined where practicable.

## III. LAW AND ANALYSIS

{¶ 27} The Ohio Supreme Court has consistently held that trial courts must be able to exercise the discretion required to achieve an equitable resolution based on the unique facts and circumstances of each divorce case. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). A reviewing court evaluates the trial court's determinations in domestic relations cases under an abuse-of-discretion standard. *Id.* An abuse of discretion is more than a mere error of law or judgment. *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 34. Therefore, a reviewing court will not substitute its judgment for that of the trial court unless the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by evidence, or grossly unsound. *Brodbeck v. Brodbeck*, 2025-Ohio-980, ¶ 13 (5th Dist.).

**Identification of Separate and Marital Property**

**{¶ 28}** Under Ohio law, a trial court is required to classify assets as marital or separate, before division. R.C. 3105.171(A)(6)(a) defines separate property as

> all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
>
> (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
>
> (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
>
> (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
>
> (iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;
>
> (v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial or postnuptial agreement;
>
> (vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
>
> (vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

**{¶ 29}** The party claiming separate property bears the burden of tracing the identity of the property by a preponderance of the evidence. *Tyra v. Tyra*, 2022-Ohio-2504 (1st Dist.). "'The party in a divorce action claiming that specific property owned when the marriage terminates is not marital but separate property has the burden of proof by a preponderance-of-the-evidence standard. Generally, the

evidence of tracing must be specific, and oral testimony unsupported by documentary evidence should not carry much weight.'" *Mullins v. Mullins,* 2023-Ohio-3266, ¶ 15 (1st Dist.), quoting *Tyra* at ¶ 15. In her first assignment of error, S.M. challenges the trial court's characterization of the joint Schwab account and the Meadowbrook property as marital assets.

**Joint Schwab Account**

{¶ 30} S.M. argues the trial court erred when it determined that the Schwab trust account is marital property. She contends the account originated as her separate property, funded with approximately $400,000 from an inheritance. At the time of marriage, however, the account was subject to a $150,000 margin loan.

{¶ 31} In 2009 or 2010, S.M. retitled the account to add A.P.'s name, converting it from individual to joint ownership. During the marriage, both parties deposited funds into the account and used it to pay marital expenses. S.M. also acknowledged that the margin loan was repaid using marital assets.

{¶ 32} Despite S.M.'s claim that the account retained its separate character, she failed to trace the remaining balance to her inheritance. The trial court emphasized that neither party presented a summary of the hundreds of account statement pages reflecting the account's extensive history spanning nearly two decades. As the court noted, "Neither party, nor any other witness, testified to any specific statement establishing a deposit, separate or marital."

{¶ 33} S.M. bore the burden to establish the account's separate status by a preponderance of the evidence; however, she failed to provide sufficient tracing.

Accordingly, the trial court did not abuse its discretion in classifying the Schwab account as marital property.

**Meadowbrook Rd. Property**

{¶ 34} S.M. next argues that the Meadowbrook Rd. property that she purchased after leaving the marital home was acquired using her separate property. The trial court found otherwise.

{¶ 35} The record shows that S.M. used two sources to fund the purchase: $108,000 withdrawn from the jointly titled Schwab account and $40,000 borrowed from her daughter's custodial trust account. S.M. offered no evidence that the child's account was a gift or inheritance for S.M.'s benefit. Nor did she demonstrate that the Schwab account, used to fund much of the purchase, remained separate property. Once the court concluded the Schwab account was marital, any property acquired with those funds was likewise properly classified as marital. *See* R.C. 3105.171(A)(3)(a). Accordingly, the trial court did not err in determining that the Meadowbrook property is a marital asset, and subject to equal division.

**Kingston Rd. Property**

{¶ 36} A.P., in his second cross-assignment of error, challenges the trial court's award of 26.9 percent of the net proceeds from the sale of the Kingston Rd. home to S.M. as separate property. A.P. argues that S.M. failed to prove by a preponderance of the evidence that the $48,157.54 down payment came from her separate property. Additionally, A.P. argues that S.M. failed to offer evidence that

S.M.'s initial down payment grew passively, and the trial court failed to analyze the issue.

{¶ 37} Just before the parties were married, they purchased the Kingston Rd. residence. The purchase price was $179,000, and S.M. paid the down payment with $48,157.54 of separate funds. S.M. testified and offered documentary evidence in support of her separate property claim. A.P. now argues, for the first time on appeal, that the trial court improperly considered S.M.'s documentary evidence because it was not signed by her and did not identify the source of the cash used for the down payment. [4] A.P.'s argument is unpersuasive. The trial court did not abuse its discretion when it determined the $48,157.54 down payment was S.M.'s separate property.

{¶ 38} A.P. also claims the trial court erred in awarding S.M. passive appreciation on the $48,157.54 down payment. During the marriage the monthly mortgage payment was paid with marital funds. The trial court found S.M.'s separate interest in the marital home was 26.9 percent (48,157.54/179,000) and included passive interest on S.M.'s down payment. The trial court calculated S.M.'s separate interest in the marital home using the formula this court previously affirmed in *Sauer v. Sauer*, 1996 Ohio App. LEXIS 2275, *12 (8th Dist. May 30, 1996). In *Sauer*, a party's total separate property interest was calculated by first

---

[4] Plaintiff's exhibit No. 134 was the Uniform Residential Loan Application from 2002.

determining the separate investment ratio by dividing the amount of the separate investment by the total investment. As applied in this case,

| S.M.'s Separate Investment | $48,157.54 |
|---|---|
| Total Investment | $179,000.00 |

Separate Investment Ratio = .2691 or 26.9 percent.

**{¶ 39}** Next, the separate investment ratio is multiplied by total appreciation.

Total Separate Property=48,157.54+(0.2691×Total Appreciation)

**{¶ 40}** Like *Sauer*, the formula includes passive appreciation on S.M.'s separate property. *Id.* The trial court found that "[n]o other separate interests were established by a preponderance of the evidence that would require an adjustment of this percentage." Accordingly, the trial court did not abuse its discretion in ordering the sale of the marital home and awarding S.M. the first 26.9 percent of net proceeds after costs associated with the sale of the Kingston Rd. property. Nor did the trial court err when it ordered the equal division of any remaining proceeds between the parties.

**{¶ 41}** Accordingly, S.M.'s first assignment of error and A.P.'s second cross-assignment of error are overruled.

**Nonprofit Business Valuation**

**{¶ 42}** Both parties challenge the trial court's treatment of a nonprofit corporation founded by S.M. in 2017. S.M., in her second assignment of error, argues that the trial court erred by valuing the Nonprofit and designating it as

marital property. A.P., in his fourth cross-assignment of error, contends the valuation was too low and should have reflected significantly greater assets.

{¶ 43} The trial court erred in classifying the Nonprofit entity as a divisible marital asset.

**Misclassification of Nonprofit as Marital Asset**

{¶ 44} Under Ohio law, a trial court must determine whether property is marital or separate before it may be equitably divided. *See Johnson v. Johnson*, 2024-Ohio-5663, ¶ 8 (10th Dist.); R.C. 3105.171(A)(3). Marital property includes real or personal property acquired by either spouse during the marriage that is owned by either or both at the time of divorce.

{¶ 45} However, the nonprofit corporation is organized under R.C. Ch. 1702. Its assets are not owned by either party individually. Rather, R.C. 1702.35 provides:

> All property acquired by a corporation by purchase, gift, devise, bequest, or otherwise shall be the absolute property of the corporation, unless at the time of acquiring such property it is otherwise in writing specified.

{¶ 46} Here, neither party presented written evidence that contributions made to the Nonprofit were intended to be personal, nor did they offer proof that the entity's assets were held for the benefit of either spouse. Although the record demonstrates that S.M. founded and worked for the entity, "'a membership interest in an LLC does not confer on its members an interest in the company's property.'" *Hunter v. Troutman*, 2025-Ohio-366, ¶ 137 (8th Dist.), quoting *In Re Salyer*, 2021 LEXIS 1606 (N.D. Ohio June 15, 2021). Moreover, this court has previously held

that nonprofit corporate assets cannot inure to the benefit of either party in a divorce. *See Macfarlane v. Macfarlane*, 2006-Ohio-3155, ¶ 51 (8th Dist.).

{¶ 47} Because the Nonprofit is a distinct legal entity and was not a party to the divorce, its assets cannot be treated as property owned by either spouse. Thus, the trial court's initial classification of the Nonprofit as a marital asset is contrary to law, and the trial court erred in concluding that its assets are subject to division.

## Valuation: Moot in Light of Misclassification

{¶ 48} The trial court calculated an average net asset value of $26,887.50 based on six years of the Nonprofit's tax returns. A.P. claimed this value understated the Nonprofit's worth, arguing that its assets exceeded $100,000. However, because the Nonprofit's assets are not divisible in the dissolution of marriage, the valuation issue is moot.

{¶ 49} The trial court abused its discretion when it classified the Nonprofit as marital property and assigned it a divisible value. S.M.'s second assignment of error and A.P.'s fourth cross-assignment of error are sustained solely to the extent that the trial court improperly characterized the Nonprofit entity as a marital asset.

## Classification of RBC Wealth Accounts

{¶ 50} In his sixth cross-assignment of error, A.P. also challenges the trial court's classification of certain RBC Wealth accounts as S.M.'s separate property. He argues that S.M. failed to disclose these assets thus their exclusion from the marital estate was improper.

**{¶ 51}** The trial court addressed these concerns and found the RBC accounts were funded by inheritance and remained segregated from marital assets. A.P. did not provide sufficient evidence to rebut this classification or demonstrate improper commingling. The trial court did not abuse its discretion in determining that the RBC wealth accounts were separate property; therefore, A.P.'s sixth cross-assignment of error is overruled.

**Division of Marital Property**

**{¶ 52}** S.M., in her third assignment of error, and A.P., in his ninth cross-assignment of error, challenge the trial court's division of marital property. Both assert that the division was inequitable, though for opposite reasons. S.M. claims the trial court failed to divide certain assets fairly. A.P., on the other hand, contends that the division did not account for S.M.'s access to substantial separate wealth and that certain decisions such as dividing retirement accounts equally were unjustified.

**{¶ 53}** In evaluating the equitable division challenged by the parties, the court considered its classification and division of all major components of the marital estate. This included (1) the marital residence (Kingston Rd.), where S.M. was awarded a 26.9 percent share of the proceeds based on her separate down payment contribution; (2) the Meadowbrook property, acquired with marital funds and classified as marital; (3) the jointly titled Schwab account that was found to be marital due to commingling and lack of tracing; (4) the Nonprofit entity, improperly classified as a marital asset and requiring reversal; and (5) the derivative Social Security disability. The trial court did not abuse its discretion in determining the

overall property division, except for its treatment of the previously addressed Nonprofit entity.

**Standard of Review**

{¶ 54} Under R.C. 3105.171(C)(1), a trial court must divide marital property equitably, not necessarily equally, based on the circumstances of each case. A reviewing court may not substitute its judgment unless the trial court's decision was unreasonable, arbitrary, or unconscionable. *See Booth,* 44 Ohio St.3d at 142.

**Equal Division of Retirement Accounts**

{¶ 55} A.P. argues in his fifth cross-assignment of error the trial court erred by dividing retirement accounts equally without accounting for S.M.'s access to millions in separate trust assets. However, the existence of separate property does not, by itself, render equal division of marital property inequitable. *See* R.C. 3105.171(C)(1); *E.g., Daniel v. Daniel*, 2014-Ohio-1161, ¶ 7. Here, the trial court found that the retirement accounts were accumulated during the marriage and constituted marital property.

{¶ 56} Moreover, A.P. did not present persuasive evidence that the trial court failed to account for relevant statutory factors, such as the duration of the marriage, earning capacity, or financial misconduct. Accordingly, the trial court did not abuse its discretion in ordering an equal division of the retirement assets. A.P.'s fifth cross-assignment of error is overruled.

**Reimbursement for Temporary Support**

{¶ 57} A.P. next claims, of error in his seventh cross-assignment, the trial court erred by failing to order S.M. to reimburse him for temporary support paid during the proceedings. An award of temporary spousal support is reviewed for abuse of discretion. *Ward v. Ward*, 2000 Ohio App. LEXIS 1934, *16 (10th Dist. May 4, 2000); *Gullia v. Gullia*, 93 Ohio App.3d 653, 665 (8th Dist. 1994). A.P. points to S.M.'s access to significant wealth, allegedly undisclosed during the pendency of the case.

{¶ 58} The purpose of permanent spousal support differs from that of temporary spousal support. "'The goal of a permanent spousal support award is to achieve an equitable result.'" *E.g., Hunter*, 2025-Ohio-366, at ¶ 149 (8th Dist.), quoting *Hloska v. Hloska*, 2015-Ohio-2153 ¶ 11 (8th Dist.). An award of permanent spousal support requires the trial court to carefully evaluate the fourteen statutory factors listed under R.C. 3105.18(C). *Id.*

{¶ 59} On the other hand, temporary spousal support is intended merely to preserve the status quo throughout the divorce proceedings. *DiLacqua v. DiLacqua*, 88 Ohio App.3d 48, 54 (9th Dist. 1993), citing *Kahn v. Kahn*, 42 Ohio App.3d 61, 68 (2d Dist. 1987). R.C. 3105.18 governs the award of temporary spousal support and permits the court to award "reasonable" temporary spousal support to either party. *Lichtenstein v. Lichtenstein,* 2023-Ohio-3355, ¶ 23 (8th Dist.).

{¶ 60} In determining whether temporary spousal support is appropriate and reasonable, the court considers the spouse's ability to pay and the dependent spouse's needs, balanced against the standard of living that the parties maintained

during their marriage. *E.g.*, *Ward*, 2000 Ohio App. LEXIS 1934, *16 (10th Dist. May 4, 2000). The fact that a spouse is self-supporting does not necessarily preclude an award of temporary support. *Id.*

{¶ 61} Temporary spousal support granted by the trial court during the pendency of the proceedings terminates at the time of the final decree for divorce. *Bentz v. Bentz*, 171 Ohio St. 535, 543 (1961), and *Stuart v. Stuart*, 144 Ohio St. 289 (1944). Its sufficiency or insufficiency can be fully taken into account in determining the amount to be allowed for permanent spousal support when that decree is formulated. *Id.*

{¶ 62} Reviewing courts "have affirmed a trial court's order that one party reimburse the other party for spousal support paid under a temporary spousal support order when the trial court determines after a final hearing that the temporary order was excessive." *Didisse v. Didisse*, 2004-Ohio-6811, ¶ 37 (7th Dist.). Furthermore, "temporary support orders may be modified retroactively to the date on which a motion to modify was filed." *E.g.*, *Thorp v. Thorp*, 2011-Ohio-1015, ¶ 55 (11th Dist.). The record fails to demonstrate that A.P. is entitled to reimbursement of temporary spousal support payments he made during the pendency of the case.

{¶ 63} Here, the trial court found that both parties engaged in prolonged and obstructive litigation conduct, which contributed to unnecessary expense. Furthermore, the trial court found that A.P. "failed to timely seek a modification of the support order." In light of these findings, there is insufficient evidence to

conclude that the temporary spousal support award was excessive. Accordingly, the court acted within its discretion by declining to award an offset or reimbursement to A.P. for the temporary support he paid. A.P.'s seventh cross-assignment of error is overruled.

**Social Security Benefits**

{¶ 64} It is undisputed that A.P. received two lump sum retroactive Social Security checks. One was for A.P.'s benefit in the amount of $66,695.60, received on or about September 1, 2020. The other was a retroactive derivative Social Security payment for the benefit of the parties' minor child for $39,016 received on or about December 1, 2020. The court ordered both lump-sum payments to be held in A.P.'s former counsel's IOLTA account until further order of the court. The trial court subsequently ordered the lump sum retroactive derivative Social Security payment intended for the benefit for the parties' minor child to be divided equally, each party receiving $19,508.

{¶ 65} "A trial court may consider Social Security benefits when making property divisions." *Neville v. Neville*, 2003-Ohio-3624, ¶ 10. However, "Social Security benefits themselves are not subject to division in a divorce proceeding." *Id.* at ¶ 8; 42 U.S.C. 407(a).

{¶ 66} These payments represent contributions that A.P. made throughout the course of his employment and, of which, he has a vested right in the payments.

*In re K.S.*, 2023-Ohio-4059, ¶ 6 (2d Dist.).  Trial courts are prohibited from dividing Social Security benefit payments as marital property.  *Neville* at ¶ 8.

**{¶ 67}** In the instant case, A.P.'s Social Security benefits are not subject to division in the party's divorce proceedings.  Thus, the trial court did not abuse its discretion when it failed to divide his lump sum retroactive Social Security payment of $66,695.60.  Accordingly, S.M.'s third assignment of error is overruled.

**Spousal Support and Imputed Income**

**{¶ 68}** S.M. argues in her fourth assignment of error that the trial court abused its discretion by denying her spousal support and imputing to her $50,000 in annual income based on her ability to access inherited assets.  There was no error in the trial court's analysis or conclusion.

**{¶ 69}** Under R.C. 3105.18(B), a court may award reasonable spousal support to either party if it deems such support appropriate.  To determine the amount and duration, the court must consider the factors listed in R.C. 3105.18(C)(1), including the parties' income, earning capacity, retirement benefits, education, standard of living, and the duration of the marriage.  This discretion is broad but not unlimited.

**{¶ 70}** Here, the trial court found the following:

- The marriage lasted over 20 years.

- S.M. holds a college degree and operates a nonprofit organization, earning $18,000 annually.

- She has no physical or mental limitations that prevent her from working.

- She has access to a Schwab trust account valued at more than $2 million, from which she may reasonably generate income.

- The trust is her separate property.

- A.P. is permanently disabled, receives $96,000 annually in combined private and Social Security disability benefits, and faces an eventual reduction when private disability payments cease at age 65.

- S.M.'s total imputed income of $21,008 per year, when combined with the substantial inheritance she received, negated the need for spousal support. In reaching this conclusion, the court calculated an annual return of $50,000 on the inheritance (using a two-percent yield) and imputed that amount to her income.

- The marital property had been equitably divided and that S.M. had the capacity and resources to support herself with no evidence that she needed further education or training.

{¶ 71} S.M. contends that the $50,000 imputed interest on her inheritance was speculative and punitive. However, the trial court justified the figure by referencing a nominal return on the trust account principal balance. "Trial courts have discretion to determine the value of property, but its valuation must be based on evidence." *A.E. v. J.E.*, 2024-Ohio-1785, ¶ 56 (8th Dist.); *McCoy v. McCoy,* 91 Ohio App.3d 570, 578 (8th Dist. 1993). The court's reasoning reflects a proper application of R.C. 3105.18(C)(1)(i) that directs courts to consider "the relative assets and liabilities of the parties."

{¶ 72} Ohio law does not require a mechanical formula for calculating spousal support. *Mills v. Mills*, 2025-Ohio-452, ¶ 28 (8th Dist.). So long as the court

considers all relevant statutory factors and articulates its reasoning, an appellate court will not substitute its judgment. *Id.*

**{¶ 73}** The record here demonstrates that S.M. had control over the trust account ending in 0724 that was established for her benefit with 30 percent of the balance in the master trust account. (*See* Exhibit GG-1). The master trust agreement permitted S.M. to take distributions of the income earned on the principal trust balance in account 0724, each year. In May 2023, the trust balance was $2,347,545.97 and had earned an income of $46,396.69. The trial court could properly consider income earned on the trust established for S.M.'s benefit. *Guagenti v. Guagenti*, 2017-Ohio-2706, ¶ 12 (3d Dist.). Thus, the trial court did not abuse its discretion when it imputed $50,000 of income available to her from her separate trust property. Because the trial court considered all necessary statutory factors, its denial of spousal support and imputation of income was neither arbitrary nor unreasonable.

**{¶ 74}** S.M.'s fourth assignment of error is overruled.

**Award of Attorney Fees**

**{¶ 75}** S.M. argues in her fifth assignment of error that the trial court erred by declining to award her reasonable attorney fees. In the trial court, both S.M. and A.P. requested an award of attorney fees. Under R.C. 3105.73, attorney fees are discretionary and depend on the parties' relative financial positions. The trial court found that both parties engaged in deplorable conduct and both parties contributed to the delays and significant costs incurred in this matter. Accordingly, the trial

court did not abuse its discretion when it ordered that they each pay their own attorney fees and litigation expenses.

{¶ 76} S.M.'s fifth assignment of error is overruled.

**Allegations of Financial Misconduct and Request for Distributive Award**

{¶ 77} In his first and eighth cross-assignments of error, A.P. contends that the trial court erred by failing to draw negative inferences from S.M.'s alleged nondisclosure of financial assets and by denying his request for a distributive award and attorney fees. There was no abuse of discretion in the trial court's rulings.

**Legal Standard for Financial Misconduct**

{¶ 78} Under R.C. 3105.171(E)(4), a trial court may compensate a spouse for the other party's financial misconduct through a distributive award. "Financial misconduct" involves intentional conduct, such as concealment, dissipation, or unauthorized use of marital assets, that results in profit to one party or defeats the other's interest in the marital estate. *See Victor v. Kaplan*, 2020-Ohio-3116, ¶ 138 (8th Dist.); *Rodgers v. Rodgers*, 2017-Ohio-7886, ¶ 30 (8th Dist.). "'There must be a clear showing that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets.'" *E.g.*, *Hunter,* 2025-Ohio-366, at ¶ 85 (8th Dist.), quoting *Eggman v. Eggman*, 2004-Ohio-6050, ¶ 24 (3d Dist.).

{¶ 79} The burden of proving financial misconduct rests with the party asserting it. *See Best v. Best*, 2011-Ohio-6668, ¶ 18 (10th Dist.). While courts may

infer misconduct from nondisclosure or evasive discovery behavior, such inferences are discretionary and not mandatory. *J.S. v. A.S.*, 2024-Ohio-6015, ¶ 47 (8th Dist.).

**A.P.'s Allegations**

{¶ 80} A.P. alleges that S.M. failed to disclose approximately $10 million in separate assets held in RBC Wealth accounts. He argues that her omission justifies an adverse inference, a finding of misconduct, and a compensatory distributive award.

{¶ 81} The trial court considered these arguments and rejected them. It found that both parties engaged in obstructive conduct during discovery and contributed to the contentious nature of the proceedings. The court concluded that although S.M. failed to disclose certain assets in a timely manner, the funds in question were ultimately shown to be separate property not marital.

{¶ 82} Furthermore, the court declined to impose a negative inference, because A.P. failed to prove S.M.'s conduct defeated his interest in any marital asset. In the absence of this essential element, a distributive award was not warranted.

**Discretionary Determinations Supported by Record**

{¶ 83} The trial court's findings reflect a balanced evaluation of the parties' conduct and a reasonable application of R.C. 3105.171(E). Although the court acknowledged S.M.'s lack of full transparency, it found comparable misconduct by A.P. and emphasized that neither party acted with clean hands.

{¶ 84} In exercising its discretion, the court declined to reward or penalize either side through a distributive award, negative inferences, or attorney fee shifting. Given this context, and the absence of a demonstrated loss to either party's share of the marital estate, the trial court did not abuse its discretion.

{¶ 85} Accordingly, A.P.'s first, eighth, and ninth cross-assignments of error are overruled.

**Conclusion**

{¶ 86} The trial court exercised sound discretion in its classification and division of marital and separate property, as well as in its determinations regarding spousal support, attorney fees, and financial misconduct. However, the record does not support the trial court's classification of the Nonprofit as marital property.

{¶ 87} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

{¶ 88} On remand, the trial court shall exclude the Nonprofit from the marital estate and vacate any monetary division related to its valuation.

{¶ 89} All other assignments and cross-assignments of error are overruled.

_____
ANITA LASTER MAYS, JUDGE

LISA B. FORBES, P.J., CONCURS IN JUDGMENT ONLY;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY

**Part II**

MARY J. BOYLE, J.:

{¶ 90} In Part II of this opinion, we address A.P.'s third cross-assignment regarding the trial court's decision to split the lump sum derivative Social Security benefit between the parties. A.P. contends that the trial court abused its discretion when it treated the $39,016 lump sum Social Security payment held in his former attorney's IOLTA account, for the benefit of their minor child, as marital property. A.P. and S.M. were each awarded $19,508, or half of the derivative Social Security lump sum payment. A.P. contends that the $39,016 payment should have been awarded to him in its entirety. S.M. contends that the derivative benefits are an additional benefit for their child and A.P. is not entitled to retain the entire benefit. When applying the abuse-of-discretion standard of review, we find that the trial court did not abuse its discretion when it ordered that the derivative payment be divided equally between S.M. and A.P.

{¶ 91} In reaching its decision to sustain the third cross-assignment of error, the dissent relies on *Neville* for the proposition that "Social Security benefits themselves are not subject to division in a divorce proceeding." *Id.*, 2003-Ohio-3624, at ¶ 8, citing *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178 (1990); 42 U.S.C. 407(a). *Neville*, however, is distinguishable.

{¶ 92} In *Neville*, the Ohio Supreme Court decided "what consideration, if any, a trial court may give to *future* Social Security benefits when dividing marital assets in a divorce action." (Emphasis added.) *Id.* at ¶ 4. While the *Neville* Court cited to 42 U.S.C. 407(a) for the proposition that any transfer or assignment of Social Security benefits is forbidden, the Court acknowledged that "those benefits may be considered by the trial court under the catchall category as a relevant and equitable factor in making an equitable distribution." *Id.* at ¶ 11. Subsequently, the Court held that "[i]n making an equitable distribution of marital property in a divorce proceeding, a trial court may consider the parties' *future* Social Security benefits in relation to all marital assets. (R.C. 3105.171, construed.)" (Emphasis added.) *Id.* at syllabus.

{¶ 93} The matter before us, however, involves the distribution of the retroactive lump-sum Social Security disability derivative payment, not that distribution of future social security benefits. As a result, we find *Williams v. Williams*, 88 Ohio St.3d 441 (2000), instructive. In *Williams*, the Ohio Supreme Court "join[ed] those jurisdictions that permit a disabled parent's child support obligation to be directly set off by Social Security payments received on behalf of the minor child . . . . Therefore, where the disabled parent has no other source of income due to his or her disability, the receipt of Social Security payments actually ensures that the obligor's child support obligation will be at least satisfied." *Id.* at 444. Consequently, the *Williams* Court held that "[a] disabled parent is entitled to a full

credit in his or her child support obligation for Social Security payments received by a minor child . . . ." *Id.* at the syllabus.

**{¶ 94}** Here, the trial court found, and we agree that, with regard to the Social Security benefits in the IOLTA Account,

> The aforesaid benefits were paid to [A.P.] and to the extent that they were recouped by Sedgwick, they were recouped while [A.P.] was under a spousal support order. As set forth elsewhere herein, [A.P.] is [currently] the obligor on the temporary spousal support order. The derivative benefit for the parties' minor child significantly exceeds [A.P.]'s obligation under the temporary child support order creating a windfall for [A.P.].

> For the foregoing reasons[,] the lump sum payment for the derivative benefit for the parties' minor child shall he divided equally between the parties, each receiving $19,508.00. The remainder of the funds held by [A.P.]'s previous counsel shall be returned to [A.P.].

(Judgment entry of divorce, Apr. 10, 2024.)

**{¶ 95}** As noted in Part I, when dividing marital property, courts have discretion to do what is equitable based on the facts and circumstances of each case. *Booth*, 44 Ohio St.3d at 144. It was, therefore, within the court's purview to find that an even distribution of the lump sum derivative payment was equitable, taking into account the total marital assets to be divided. A.P. has not demonstrated that splitting this payment evenly resulted in an inequitable distribution.

**{¶ 96}** Therefore, A.P.'s third cross-assignment of error is overruled.

It is ordered that the parties shall equally share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this opinion shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS IN PART (WITH SEPARATE OPINION)

ANITA LASTER MAYS, J., DISSENTING IN PART:

**{¶ 97}** I respectfully dissent from the Part II majority's opinion ("majority opinion") affirming the trial court's decision to split the Social Security benefits held in the IOLTA account. I would sustain A.P.'s third cross-assignment of error.

**{¶ 98}** In his third cross-assignment of error, A.P. challenges the trial court's characterization and division of the Social Security benefits held in his former attorney's IOLTA account. A.P. argues the trial court abused its discretion when it treated the $39,016 lump-sum Social Security payment, for the benefit of the minor child, as marital property. Each party was awarded $19,508, or half of the derivative Social Security lump-sum payment.

**{¶ 99}** As a preliminary matter, I must address the terms of A.P.'s private disability policy with Sedgwick. A.P. initially received $8,000 per month in disability payments from Sedgwick, his private disability insurer. After the Social Security Administration approved his application, A.P. began receiving $2,719 per

month for Social Security Disability Insurance ("SSDI"), and $1,359 per month as a derivative payment for the benefit of the minor child (collectively, "Social Security payments").

{¶ 100} In accordance with the "windfall" offset provisions of the Sedgwick policy, once A.P. began receiving Social Security payments, his private monthly disability benefits from Sedgwick were reduced by the amount of his combined SSDI and derivative payments. As a result, A.P.'s monthly Sedgwick benefit decreased from $8,000 to $3,922.[5]

{¶ 101} Additionally, since A.P. was entitled to retroactive Social Security payments from the date of his application, he received a lump sum retroactive SSDI payment of $66,695.60 for himself and a lump sum retroactive derivative payment of $39,016 for the parties' child. Under the terms of the Sedgwick policy, A.P. was required to reimburse the insurer for the difference between the $8,000 he received and the $3,922 he was entitled to for each affected prior month. In other words, the lump sum retroactive payments were owed to Sedgwick as reimbursement for overpayments they made to A.P. during the pendency of his SSDI application. When the trial court ordered those funds held in an IOLTA account, A.P. could not send the overpayments to Sedgwick. In response, Sedgwick recouped the overpayments by reducing or "clawing back" A.P.'s entire monthly private disability payment of $3,922 until the overpayment balance was satisfied. (Defendant's Motion to

---

[5] Ideally, once approved for SSDI, A.P. should have received $3,922 from Sedgwick, $2,719 from SSDI, and $1,359 as a derivative payment for the minor child per month.

Dissolve Magistrate's Order of January 21, 2021, Exhibit A, 5/5/2021.) While Sedgwick recouped these funds, A.P.'s net private-disability payment was $00.00.

{¶ 102} Despite the loss of his entire private-disability payment each month, the record reflects A.P had no support arrearages at the time of the final judgment entry. Absent an arrearage, the trial court's order effectively divided the retroactive lump sum derivative payment as marital property. As addressed in appellant's third assignment of error, Social Security benefits are not subject to division in a divorce proceeding. 42 U.S.C. 407(a).

{¶ 103} The majority distinguishes *Neville* on the ground that it concerns future Social Security benefits, whereas the instant case involves a retroactive lump sum derivative benefit already paid and ordered held in a lawyer's trust account. This distinction, however, is not consistent with the express language of *Neville* and subsequent authority interpreting 42 U.S.C. 407(a).

{¶ 104} Regarding division, *Neville* makes no distinction between past, present, or future benefits. This legal rule is grounded in the federal anti-assignment provision, 42 U.S.C. 407(a), and not limited by the timing of the benefit. The Court did not limit this principle to "future" benefits only. It affirmed that Social Security benefits are not divisible. Although *Neville* permits courts to consider future Social Security benefits as an equitable factor under R.C. 3105.171(F), that is not the same as dividing the benefits. The holding in *Neville* merely allows *consideration*, not division, of future benefits in equitable determinations.

{¶ 105} "In making an equitable distribution of marital property in a divorce proceeding, a trial court may consider the parties' future Social Security benefits in relation to all marital assets." *Neville* at ¶ 11. The Court expressly rejected any attempt to use an equitable property distribution as a backdoor method of dividing Social Security benefits:

> "Contrary to appellee's assertion, the court did not divide the Social Security benefits themselves. Instead, the court merely considered the value of these benefits to achieve an equitable property division."

*Id*. at ¶ 12.

{¶ 106} Thus, the majority's suggestion that *Neville* is distinguishable because it involves future benefits is unsupported. *Neville* supports the broader point that Social Security benefits, whether paid or expected, are not marital property subject to division.

{¶ 107} In *Neville*, the Court reaffirmed the rule from *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178 (1990), which itself cited 42 U.S.C. 407(a). That statute states in relevant part:

> a) In general. The right of any person to any future payment under this title [42 U.S.C. 401 et seq.] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title [42 U.S.C. 401 et seq.] shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. 407(a).

{¶ 108} However, there are exceptions. For instance, Section 659(a), 42 U.S.C. 401 et seq. creates an exception for the collection of child support and spousal

support that is past due, permitting credits for support arrearages as recognized in *Williams*, 88 Ohio St.3d at 441. In our case, there were no arrearages. Because there were no past-due support arrearages, the exception under Section 659(a) does not apply. The derivative benefits in this case were not assigned to satisfy a preexisting legal obligation like in *Williams* but rather were divided as a marital asset; conduct squarely barred by Section 407(a).

{¶ 109} The majority next relies on *Williams* for the proposition that Social Security derivative payments may be equitably distributed, analogizing the facts in the present case to a child support offset. However, *Williams* concerned the proper crediting of derivative benefits against a disabled parent's child-support obligation, not the division of the benefit between parents as marital property.

{¶ 110} "[A] disabled parent is entitled to a full credit in his or her child support obligation for Social Security payments received by a minor child." *Williams* at syllabus. This principle has no direct application to a property division context. Subsequent appellate decisions have consistently distinguished between crediting derivative benefits for support purposes which is permissible, and dividing those benefits between spouses, which is prohibited. This case is more similar to *Watson v. Watson,* 2003-Ohio-6350*,* ¶ 22 (10th Dist.), where the court ordered the division of a lump sum derivative Social Security payment for the benefit of the minor children.

{¶ 111} In *Watson*, the lump-sum payments received on behalf of the parties' minor children represented benefits arrearages for the months of May 2001 through

January 2002, during which appellant was in fact disabled but had not yet received approval of her disability application. The Tenth District held that the trial court erred in treating the lump-sum payments as a marital asset subject to equitable division. *Id.*

{¶ 112} The assignment of error stemmed from the trial court's consideration of her receipt of a lump sum social security disability payment. The Tenth District concluded that Social Security lump sum payments are not marital assets subject to division, nor are they to be considered in the division of property. *See Watson,* 2003-Ohio-6350; *Williams v. Williams,* 2000-Ohio-375 (reasoning that Social Security disability benefits received on behalf of a minor child should not have been considered in calculations regarding division of marital property); *Parr v. Parr,* 1997 Ohio App. LEXIS 802 (8th Dist. Mar. 6, 1997). *Hirzel v. Ooten,* 2008-Ohio-7006, ¶ 44–45 (4th Dist.).

{¶ 113} These authorities reaffirm that lump sum derivative benefits, despite being tangible and disbursed, are still statutorily protected under 42 U.S.C. 407(a) and not marital assets subject to division.

{¶ 114} Finally, the majority does not address the statutory prohibition under 42 U.S.C. 407(a) that bars "execution, levy, attachment, garnishment, or other legal process" against Social Security benefits. Nor does it reconcile the trial court's division of the derivative benefits with this prohibition. This silence is particularly problematic because in this case the trial court's judgment expressly divided the funds, not merely considered them as an equitable factor.

{¶ 115} Moreover, there is no indication that the division was framed as offsetting like in *Williams* or adjusting another divisible asset, as permitted in *Neville*. The distribution appears to be a direct split of the benefit itself, precisely what 42 U.S.C. 407(a), *Hoyt*, *Neville*, and numerous appellate courts prohibit.

{¶ 116} When dividing marital property, courts have discretion to do what is equitable based on the facts and circumstances of each case. *Booth*, 44 Ohio St.3d at 142, 144. However, equitable discretion must yield to federal law. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979) (holding that federal benefits statutes preempt state domestic relations law to the extent of conflict). The majority suggests that it was within the trial court's equitable discretion to divide the derivative payment because the benefit "created a windfall" and exceeded the obligor's support obligation. Even if true, this reasoning is insufficient to override federal statutory protection.

Accordingly, I would find that the trial court abused its discretion when it ordered the division of one of the lump sum Social Security payments. More specifically, the division of the $39,016 retroactive Social Security disability derivative payment was an abuse of discretion. I would reverse this portion of the judgment requiring a division of Social Security payments held in A.P.'s former counsel's IOLTA account and remand to the trial court.